## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EXTANG CORPORATION, UNDERCOVER, INC. and LAURMARK ENTERPRISES, INC. d/b/a BAK INDUSTRIES,

      Plaintiffs,

    v.

TRUCK ACCESSORIES GROUP, LLC d/b/a LEER, INC.,

      Defendant.

C.A. No. 19-00923-KAJ

**REDACTED VERSION**

## DEFENDANT'S OPENING BRIEF IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE CERTAIN
## PORTIONS OF THE OPINIONS OF PLAINTIFFS' TECHNICAL EXPERT

Dated:  December 13, 2021
**Redacted Version filed on December 22, 2021**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
Regina S.E. Murphy (No. 5648)
1000 North West Street, Suite 1500
Wilmington, DE  19801
Tel: (302) 300-3434
Fax: (302) 300-3456
Email:  chad.stover@btlaw.com
Email:  gigi.murphy@btlaw.com

D. Randall Brown (admitted *pro hac vice*)
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Tel:  (260) 425-4674
Fax: (260) 424-8316
Email:  randy.brown@btlaw.com

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................1

II.     SUMMARY OF FACTS AND PROCEDURAL HISTORY .............................2

III.    ARGUMENT ........................................................................................3

    A.  There is no dispute that Leer's proposed non-infringing was an available, acceptable, non-infringing substitute making an award of lost profits unavailable. ...................................................................................4

        1.  Unrebutted Non-Infringing Alternative to the '073 Patent....................6

        2.  Unrebutted Non-Infringing Alternative to the '264 Patent....................7

        3.  Unrebutted Non-Infringing Alternative to the '021 Patent....................8

        4.  Unrebutted Non-Infringing Alternative to the '358 Patent....................9

    B.  Leer does not infringe the '264, '021, or '358 patents. ......................................10

        1.  The HF350 does not infringe the '264 or '021 patents...........................10

            a.  No latch assembly on the bottom surface of the panels. ..................11

            b.  The HF350's "lip plate" is not the claimed "panel support surface."...........................................................................................13

            c.  No "cab panel fixed in place within the cargo box."........................17

            d.  The HF350 has no "second resilient hinge strip"/"second resilient connector" connecting the second panel to the third panel as required by independent claims 1 and 25 of the '264 patent. ...........................................................................................17

            e.  The HF350 has no "second spacer."................................................19

        2.  The HF350 does not infringe the '358 patent. .........................................22

    C.  Plaintiffs' doctrine of equivalents ("DOE") argument fails. ..............................24

    D.  The Court should grant summary judgment of no willful infringement. ...........27

    E.  Claims 1 and 25 of the '264 patent and claim 31 of the '021 patent are invalid as anticipated or rendered obvious by the '402 and '893 Wheatley patents...........28

        1.  The '402 patent incorporates by reference the '893 patent....................30

        2.  All independent claim limitations are disclosed in the '402/'893 patents. 30

            a.  No reasonable jury could find tonneau cover assembly for a pick-up truck cargo box and panels not disclosed. ........................................32

            b.  No reasonable jury could find tonneau cover attachable to installed rails not disclosed. ...........................................................................33

       c.    No reasonable jury could find latch and release assemblies not disclosed.     35

       d.    No reasonable jury could find resilient hinge strip/connector not disclosed.     36

       e.    No reasonable jury could find spacers not disclosed........................38

       f.    No reasonable jury could find stake pocket openings not disclosed.     39

   3.    '264 patent dependent claims are invalid...................................41

   4.    '021 patent dependent claims are invalid...................................46

F.    The Court should exclude the opinions of Plaintiffs' technical expert Dr. Davis concerning the availability and acceptability of non-infringing alternative tonneau covers and secondary considerations of non-obviousness...................46

   1.    Dr. Davis has no expertise to opine on availability or commercial acceptability. ..............................................................................46

   2.    Dr. Davis' opinions on secondary considerations lack foundation..........47

       a.    Dr. Davis' commercial success opinion lacks any nexus.................47

       b.    Dr. Davis identifies no products Leer allegedly copied and his cut and paste "opinion" is nonsensical. .............................................48

       c.    Dr. Davis' opinion on no independent invention has no support.     49

       d.    Dr. Davis' opinion on long felt need is conclusory and nonsensical. ...................................................................................50

IV.      Conclusion.......................................................................................50

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*,
  501 F.3d 1307 (Fed. Cir. 2007)..................................................................... 10

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003).......................................................... 34, 37, 39

*In re Applied Materials, Inc.*,
  692 F.3d 1289 (Fed. Cir. 2012)..................................................................... 48

*AquaTex Indus., Inc. v. Techniche Sols.*,
  479 F.3d 1320 (Fed. Cir. 2007)..................................................................... 25

*B/E Aerospace, Inc. v. C&D Zodiac, Inc.*,
  962 F.3d 1373 (Fed. Cir. 2020), *cert. denied sub nom. B/E Aerospace,*
  *Inc. v. C&D Zodiac, Inc.*, 141 S. Ct. 1127 (2021) ..................................... 36, 37

*Callaway Golf Co. v. Acushnet Co.*,
  576 F.3d 1331 (Fed. Cir. 2009)..................................................................... 30

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)...................................................................................... 46

*Edgewell Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*,
  Civ. A. No. 15-11882018 (KAJ), U.S. Dist. LEXIS 230070 (D. Del.
  March 27, 2018).................................................................................. 4, 29, 36

*Evolved Wireless, LLC v. Apple Inc.*,
  No. CV 15-542-JFB-SRF, 2019 WL 8128550 (D. Del. Feb. 19, 2019) ................. 27, 28

*Evonik Degussa GmbH v. Materia, Inc.*,
  305 F. Supp. 3d 563 (D. Del. 2018)............................................................... 27

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)...................................................................................... 10

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)...................................................................................... 46

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966)......................................... 40

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
  185 F.3d 1341 (Fed. Cir. 1999)................................................................... 4, 5

*Hutchins v. Zoll Med. Corp.*,
    492 F.3d 1377 (Fed. Cir. 2007)..................................................................10, 27

*Intellectual Ventures I LLC v. Symantec Corp.*,
    234 F. Supp. 3d 601 (D. Del. 2017)..................................................................27

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
    No. CV 18-1359-MN, 2021 WL 3033396 (D. Del. July 19, 2021)................................27

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
    205 F.3d 1377 (Fed. Cir. 2000)..................................................................10

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 ..................................................................30, 36, 39, 40

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
    485 F.3d 1157 (Fed. Cir. 2007)..................................................................40

*Lemelson v. United States*,
    752 F.2d 1538 (Fed. Cir. 1985)..................................................................25

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
    970 F. Supp. 2d 1229 (D. Utah 2013)..................................................................47, 48

*Media Techs. Licensing, LLC v. Upper Deck Co.*,
    596 F.3d 1334 (Fed. Cir. 2010)..................................................................48

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004)..................................................................27

*Omega Eng'g, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)..................................................................17

*Osseo Imaging, LLC v. Planmeca USA Inc.*,
    No. CV 17-1386-LPS, 2020 WL 6318724 (D. Del. Oct. 28, 2020) ..............................26

*Outside Box Innovations, LLC v. Travel Caddy, Inc.*,
    260 F. App'x 316 (Fed. Cir. 2008) ..................................................................19

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ..................................................................47

*Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*,
    387 F. Supp. 3d 404 (D. Del. 2018), *aff'd* 943 F. 3d 929 (Fed. Cir. 2019) ................28

*PODS, Inc. v. Porta Stor, Inc.*,
    484 F.3d 1359 (Fed. Cir. 2007)..................................................................26

*Poly-Am., L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016) ................................................................. 17

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017) ............................................................... 4, 5

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008) ........................................................... 47, 48

*TechSearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002) ................................................................... 3

*Toro Co. v. White Consol. Indus., Inc.*,
    199 F.3d 1295 (Fed. Cir. 1999) ................................................................. 17

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
    626 F.3d 1361 (Fed. Cir. 2010) ................................................................. 40

*Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*,
    520 U.S. 17 ........................................................................................... 10, 26

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) ................................................................. 48

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. 09-157-RGA, 2013 WL 865974 (D. Del. Mar. 7, 2013) ............... 47, 49, 50

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996) ................................................................... 25

**Statutes**

35 U.S.C. ¶ 112 ............................................................................................ 28

35 U.S.C. § 102 ............................................................................................ 29

35 U.S.C. § 102(b) ....................................................................................... 29

35 U.S.C. § 103 ....................................................................................... 29, 30

35 U.S.C. § 112(d) ....................................................................................... 44

**INDEX OF EXHIBITS**
**IN SUPPORT OF DEFENDANT LEER'S MOTION FOR SUMMARY JUDGMENT**

| Exhibit | Description |
|---|---|
| A | U.S. Patent No. 9,815,358 |
| B | U.S. Patent No. 6,893,073 |
| C | U.S. Patent No. 7,537,264 |
| D | U.S. Patent No. 8,182,021 |
| E | Excerpts of March 3, 2021 Discovery Dispute Conference |
| F | Plaintiffs' Responses to Defendant Truck Accessories LLC's First Set of Interrogatories, No. 5, dated April 3, 2020 |
| G | 12/7/2021 C. Stover email to S. Caloiaro and J. Redway |
| H | Plaintiffs' December 3, 2021 Supplemental Response to Defendant's First Set of Interrogatories Nos. 5 and 8 |
| I-J | Intentionally Omitted |
| K | Excerpts of Expert Report of Gregory Davis, Ph.D., P.E. Regarding Infringement of U.S. Patent Nos. 9,815,358, 6,893,073, 7,537,264 and 8,182,021 |
| L | Excerpts from Rebuttal Expert Report of Gregory Davis, Ph.D., P.E. Regarding Validity of U.S. Patent Nos. 9,815,358, 6,893,073, 7,537,264 and 8,182,021 |
| M | Curriculum Vitae of Gregory Davis |
| N | Excerpts from Deposition Transcript of Jean Walker |
| O | Excerpts from Deposition Transcript of Gregory Davis |
| P | Intentionally Omitted |
| Q | Excerpts from File History of U.S. Patent 7,537,264 (EULEER0000585-611; EULEER0000642-46; EULEER0000665-673 |
| R | Court's Claim Construction Opinion (D.I. 90) |
| S | design drawings of component parts of the HF350 produced by Defendant bates stamped LEER000209-211 |
| T | Excerpts from File History of U.S. Patent 8,182,021 (EULLEER0001083-86; EULLEER0001115-1123) |
| U | Defendant's Answer and Affirmative Defenses (D.I. 10) |
| V | Defendant's First Amended Answer, Affirmative Defenses, and Counterclaims (D.I. 35) |
| W | Defendant's Responses to Plaintiffs' First Set of Interrogatories Nos. 5, 6, 8-11, served on February 19, 2020 |
| X | Defendant's First Supplemental Response to Plaintiffs' Interrogatory Nos. 5, 12 and 13 |
| Y | U.S. Patent No. 5,427,428 ("Ericson") |
| Z | U.S. Patent No. 6,422,635 ("Steffens") |
| AA | U.S. Patent No. 6,217,102 ("Lathers") |
| BB | U.S. Patent No. 5,636,893 ("Wheatley") |

| CC | U.S. Patent No. 6,024,402 ("Wheatley") |
|----|----------------------------------------|
| DD | U.S. Patent No. 4,313,636 ("Deeds") |
| EE | Plaintiff's Response to Leer's Second Set of Interrogatories No. 16 |
| FF | U.S. Patent No. 6,340,194 ("Muirhead") |
| GG | Competitive Market Data for Tonneau Covers, produced by Defendant bates stamped LEER019638-LEER019643 |
| HH | Set of engineering drawings for certain components and subcomponents the HF350M produced by Defendant bates stamped LEER002417-2450 |
| II | Engineering drawings for a clamp of the HF350M produced by Defendant bates stamped LEER011407-13 |
| JJ | Leer® HF350M Installation Instructions & Owner's Manual produced by Defendant bates stamped LEER001521-32 |
| KK | HF350M cover assembly drawing produced by Defendant bates stamped LEER000003 |

# TABLE OF ABBREVIATIONS

| Description | Abbreviation |
|---|---|
| All "Ex." herein refer to the exhibits to the declaration of Regina S.E. Murphy being filed herewith. | |
| U.S. Patent No. 9,815,358 | '358 patent |
| U.S. Patent No. 6,893,073 | '073 patent |
| U.S. Patent No. 7,537,264 | '264 patent |
| U.S. Patent No. 8,182,021 | '021 patent |
| Declaration of Joseph F. Rakow, Ph.D., P.E., | Rakow Decl. |
| Declaration of Jennifer Vanderhart, Ph.D. | Vanderhart Decl. |
| Declaration of Eugene A. Dylewski, II | Dylewski Decl. |
| Excerpts of Expert Report of Gregory Davis, Ph.D., P.E. Regarding Infringement of U.S. Patent Nos. 9,815,358, 6,893,073, 7,537,264 and 8,182,021 | Davis Inf. |
| Excerpts from Rebuttal Expert Report of Gregory Davis, Ph.D., P.E. Regarding Validity of U.S. Patent Nos. 9,815,358, 6,893,073, 7,537,264 and 8,182,021 | Davis Reb. |
| Excerpts of Deposition Transcript of Jean Walker | Walker Dep. Tr. |
| Excerpts of Deposition Transcript of Gregory Davis | Gregory Dep. Tr. |
| U.S. Patent No. 5,427,428 ("Ericson") | Ericson '428 patent or '428 patent |
| U.S. Patent No. 6,422,635 ("Steffens") | Steffens '635 patent or '635 patent |
| U.S. Patent No. 6,217,102 ("Lathers") | Lathers '102 patent '102 patent |
| U.S. Patent No. 5,636,893 ("Wheatley") | '893 patent |
| U.S. Patent No. 6,024,402 ("Wheatley") | '893 patent |
| U.S. Patent No. 4,313,636 ("Deeds") | Deeds '636 patent or '636 patent |
| U.S. Patent No. 6,340,194 ("Muirhead") | Muirhead '194 patent or '194 patent |

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs accuse Leer's HF350 pickup truck tonneau cover of infringing four Asserted Patents.[1] As explained herein, the Court should grant summary judgment of non-infringement, invalidity, and no lost profits damages, and exclude certain opinions of Plaintiffs' technical expert.

As a threshold matter, Plaintiffs lone damages theory—lost profits—fails because noninfringing alternatives existed. During discovery, Plaintiffs told Judge Noreika that "we may end up dropping lost profits" because it is "going to be a difficult issue for us both from a non-infringing alternative as well as an enforcement issue."[2] Despite this concession, Plaintiffs and their expert concocted and issued a lost profits opinion. In fact, it was their only damages theory—they offered no reasonable royalty opinion.[3] Plaintiffs' intuition was correct, however. Lost profits are unavailable because Leer has unrebutted evidence of available and acceptable non-infringing alternatives to the accused HF350.

Summary judgment of non-infringement of the related '264 and '021 patents and the '358 patent is appropriate because:

- The HF350's latch mechanism is located inside not "on a bottom surface of" one or more folding panels of the tonneau cover as required by the '264 and '021 patents.

---

[1] **Ex. A**, U.S. Patent Nos. 9,815,358 (the "'358 patent"); **Ex. B,** 6,893,073 (the "'073 patent"); **Ex. C**, 7,537,264 ("'264 patent"); and **Ex. D**, 8,182,021 (the "'021 patent").

[2] **Ex. E**, 3/2/21 Hrg. Tr. 21:1-6.

[3] During fact discovery. Plaintiffs did not disclose a reasonable royalty basis or amount. Plaintiffs responded to Leer's damages contention interrogatory on April 3, 2020, stating that they would disclose that evidence during expert discovery. **Ex. F** at No. 8. They did not. **Twenty months later**, on December 3, 2021, an hour after the close of the last expert deposition and four months after the close of fact discovery, Plaintiffs served a one-sentence supplemental interrogatory response saying they planned to "offer lay testimony from a Plaintiffs' witness…[that] the royalty amount would be the anticipated lost profits." **Ex. H** at No. 8. Leer has asked Plaintiffs to withdraw this untimely supplemental response. **Ex. G** If they do not, Leer intends to move to strike.

- The HF350 sits on top of and is supported by the sidewalls of the truck's cargo box, whereas the '264 and '021 claims require panels recessed within and a "panel support surface" inside the cargo box. (*See* SOF ¶ 20.)

-  The HF350 does not have "a *second* resilient hinge strip" or "second resilient connector" "*connecting the second panel to the third panel*" of the cover as required by the '264 patent. (*See* SOF ¶¶ 3, 9.)

- The HF350 lacks a "second spacer pivotally attached to the third panel and to a fourth panel" as required by the '021 patent. (*See* SOF ¶¶ 4, 15-18.)

- The HF350 does not have an integrated, single-component "forward section" supporting a stack of folded panels as required by the '358 patent. (*See* SOF ¶ 14.)

The '264 and '021 claims are anticipated or obvious in view of the prior art. Because Plaintiffs' technical expert, Dr. Davis, is not qualified to opine regarding secondary considerations of non-obviousness or the absence of acceptable alternatives, his opinions should be excluded.

## II.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

This case involves "tonneau" covers for the bed or "cargo box" of pickup trucks. The parties agree that the technology is "rather simple" and has existed for decades.[4] Tonneau covers protect against theft, debris, and weather.[5] They can be made from soft or hard materials.[6]

Leer's HF350 is a hard folding cover that has a bulkhead panel assembly, three folding panels, four hinges, and one spacer.[7] When installed on a pickup truck, the bulkhead panel and all three folding panels of the HF350 sit on top of and are supported by the truck's cargo box sidewalls.[8] The bulkhead panel assembly is composed of a central panel and side frame members

---

[4] Rakow Decl. at Ex. 1 ¶¶ 19-21; **Ex. L**, Davis Reb. ¶ 37-38.
[5] **Ex. L**, Davis Reb. ¶¶ 38; Vanderhart Decl. at Ex. 1 ¶ 42.
[6] Vanderhart Decl. at Ex. 1 ¶ 42.
[7] SOF ¶ 2.
[8] SOF ¶¶ 2-3, 10.

or end caps bolted to the central panel, which suspend the central panel over the cargo box.[9] The HF350 includes rails clamped to each cargo box sidewall.[10]

Plaintiffs are all subsidiaries of Truck Hero, Inc. and competitors of Leer. Extang owns the '073 patent. Undercover owns the '358 patent, and Bak Industries owns the '264 and '021 patents.

The Asserted Patents brought nothing new to the field and instead restated existing concepts, including from patents previously issued to the same inventors.[11] The '264 and '021 patents address covers supported by side rails that are attached inside the cargo box between the pickup truck's sidewalls so the top surface of the cover can be flush with the truck bed, rather than supported on top of the truck sidewalls as is the HF350. The '264 and '021 patents also disclose latch and release assemblies attached to the bottom surface of the cover's panels for latching the panels to side rails. The '264 patent is the parent of the '021,[12] and the two patents share the same drawings and written description. The '358 patent addresses known characteristics of a fixed cab panel or "forward section" onto which the folding panels can be stacked when the cover is folded up. The '073 patent discloses certain features of clamps for attaching a support frame of a soft roll up (not hard folding) tonneau cover to a pickup truck's sidewalls.

III.   ARGUMENT

Summary judgment is "appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). "If the moving party has demonstrated an absence of material fact, the nonmoving party then must come

---

[9] SOF ¶ 14.
[10] SOF ¶ 9.
[11] Rakow Decl. at Ex. 1 ¶ 20.
[12] *See* **Ex. D** (cover page at (63)).

forward with specific facts showing that there is a genuine issue for trial." *Edgewell Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, Civ. A. No. 15-11882018 (KAJ), U.S. Dist. LEXIS 230070, at *9 (D. Del. March 27, 2018) (internal quotation marks and citation omitted). "The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient to defeat summary judgment; there must be enough evidence to enable a reasonable jury to find for the nonmoving party on that issue." *Id.* at *10.

A.    **There is no dispute that Leer's proposed non-infringing was an available, acceptable, non-infringing substitute making an award of lost profits unavailable.**

Plaintiffs did not present any fact or expert evidence of a reasonable royalty computation.[13] Instead, Plaintiffs' lone damages theory is lost profits. "To recover lost profits, the patentee bears the burden of proof to show a reasonable probability that, but for infringement, it would have made the sales that were made by the infringer." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citations and internal quotation marks omitted). "[A] fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed. Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999). "[W]here an infringer demonstrates that it could have chosen to market a noninfringing alternative and that it would have done so had it known that it was infringing . . . the sales that it made of the infringing products were not sales that the patentee would otherwise have made . . . ." *Id.* at 1351

---

[13] Plaintiffs' untimely 12/3/2021 attempt to supplement their interrogatory response is improper as set forth in footnote 3 above.

4

(citation omitted).” “An alternative does not need to be on the market to be available.” *Presidio*, 875 F.3d at 1381 (citation omitted).

The availability and acceptability of a non-infringing alternative “preclude[s] any lost profits.” *Grain Processing,* 185 F.3d at 1356. It is the plaintiff’s burden to prove the absence of any available noninfringing alternatives. *Presidio,* 875 F.3d at 1381 (“[Plaintiff] failed to provide evidence that the 560L capacitor was either not an acceptable or available substitute to [plaintiff’s] BB capacitor.”).

Factors considered when determining whether a non-infringing alternative could have been readily commercialized include: 1) whether the defendant had the necessary equipment, know-how, and experience to use the non-infringing alternative; 2) whether the defendant could readily obtain all of the material to implement the non-infringing alternative; and 3) whether the non-infringing alternative was well known in the field at the time of infringement. *Grain Processing*, 185 F.3d at 1353-54.

As shown below, Leer has unrebutted evidence of several acceptable, available non-infringing alternatives to the HF350 as to each of the Asserted Patents. Plaintiffs have no admissible, contrary evidence. Thus, (i) there is no dispute of fact that these proposed changes were available, acceptable, and non-infringing alternatives, (ii) Plaintiffs have failed to carry their burden of showing an absence of non-infringing alternatives, (iii) lost profits are not an available remedy, and (iv) summary judgment should be entered against Plaintiffs. *Grain Processing,* 185 F.3d at 1356.

### 1.    Unrebutted Non-Infringing Alternative to the '073 Patent

Asserted claims 1 and 6 of the '073 patent require a clamp for attaching a support frame to the sidewall of the cargo box that has both upward and downward flanges.[14]

---

[14] **Ex. B**, 10:10-25; 11:3-17
[15] Rakow Decl. at Ex. 2 ¶¶191-219.
[16] Vanderhart Decl. at Ex. 1 ¶¶ 62-67. *See also* Dylewski Decl. ¶ 1.
[17] Vanderhart Decl. at Ex. 1 ¶¶ 62-67; Dylewski Decl. ¶¶ 1-4; **Ex. N**, Walker Dep. Tr. 54:15-55:6; 88:20-89:17 (noting the 650 competes with the 350); **Ex. GG** at LEER019643 (same).
[18] Vanderhart Decl. at Ex. 1 ¶¶ 62-67; Dylewski Decl. ¶¶ 1-4.
[19] Vanderhart Decl. at Ex. 1 ¶¶ 62-67; Dylewski Decl. ¶¶ 1-4.
[20] Vanderhart Decl. at Ex. 1 ¶¶ 62-67; Dylewski Decl. ¶¶ 1-4.

This technology was available to Leer at the time of alleged infringement, as it is an obvious and simple solution.

This alternative would not infringe the '073 patent or any of the other asserted patents.[22]

### 2.    Unrebutted Non-Infringing Alternative to the '264 Patent.

All asserted claims of the '264 patent require a latch assembly on a bottom surface of each of the panels for latching the panels into latch channels in rails installed inside the cargo box.[23]

This alternative could have been easily and quickly accomplished

It was therefore available to Leer and would have been acceptable to

---

[21] Vanderhart Decl. at Ex. 1 ¶¶ 62-67; Dylewski Decl. ¶¶ 1-4.

[22] Vanderhart Decl. at Ex. 1 ¶ 66; Rakow Decl. ¶¶ 4-5

[23] **Ex. C**,  8:2-37, 11:14 –12:19 (claims 1 and 25).

[24] Vanderhart Decl. at Ex. 1 ¶¶ 68-72; Dylewski Decl. ¶¶ 5-7.

[25] Vanderhart Decl. at Ex. 1 ¶¶ 68-72; Dylewski Decl. ¶¶ 5-7.

consumers who would                                                      .[26]

                                                        would not infringe the

'264 patent or any of the other asserted patents.[27]

> **3.      Unrebutted Non-Infringing Alternative to the '021 Patent.**

The asserted claims of the '021 patent require a "fourth panel secured to the extension

plates."[28]

It would take approximately                                      to account for this, and there

would be                              .[30] This alternative would be acceptable to a consumer as it would

                                                                                        This

---

[26] Vanderhart Decl. at Ex. 1 ¶¶ 68-72; Dylewski Decl. ¶¶ 5-7.
[27] Vanderhart Decl. at Ex. 1 ¶ 71; Rakow Decl. ¶¶ 4-5.
[28] **Ex. D** claims 31, 32, and 34.
[29] Vanderhart Decl. at Ex. 1 ¶¶ 73-80; Dylewski Decl. ¶¶ 8-10; **Ex. K,** Davis Inf. at 17 (image on right, annotated)
[30] Vanderhart Decl. at Ex. 1 ¶¶ 73-80; Dylewski Decl. ¶¶ 8-10.
[31] Vanderhart Decl. at Ex. 1 ¶¶ 73-80; Dylewski Decl. ¶¶ 8-10.

alternative would not infringe the '021 patent or any of the other asserted patents.[32]

### 4.   Unrebutted Non-Infringing Alternative to the '358 Patent.

An alternative to the single-component cab panel construction claimed in the asserted claims of the '358 patent would be

Therefore, this alternative

---

[32] Vanderhart Decl. at Ex. 1 ¶ 71; Rakow Decl. ¶¶ 4-5.
[33] Vanderhart Decl. at Ex. 1 ¶¶ 81-87; Dylewski Decl. ¶¶ 11-14
[34] Vanderhart Decl. at Ex. 1 ¶¶ 81-87; Dylewski Decl. ¶¶ 11-14; **Ex. K**, Davis Inf. at 153, 157 (images)
[35] Vanderhart Decl. at Ex. 1 ¶¶ 81-87; Dylewski Decl. ¶¶ 11-14.
[36] Vanderhart Decl. at Ex. 1 ¶¶ 81-87; Dylewski Decl. ¶¶ 11-14.
[37] **Ex. N, Ex. GG** at LEER019643.

would be acceptable to customers and was commercialized over the entirety of the damages period

This alternative

would not infringe the '358 Patent or any of the other asserted patents.[39] For the foregoing reasons,

the Court should grant summary judgment that lost profits are not an available remedy.

**B.      Leer does not infringe the '264, '021, or '358 patents.**

"Patent infringement requires that every element and limitation in a correctly construed

claim is embodied in the accused system either literally or, if embodied by an equivalent, in

compliance with the rules of equivalency as set forth in *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki Co.,* 535 U.S. 722, (2002) and *Warner–Jenkinson Co. v. Hilton Davis Chemical*

*Co.,* 520 U.S. 17, 117 S (1997) and implementing rulings." *Hutchins v. Zoll Med. Corp.*, 492 F.3d

1377, 1380 (Fed. Cir. 2007) (some internal citations omitted).

"[T]o prove direct infringement, a patentee must either [A] point to specific instances of

direct infringement or [B] show that the accused device necessarily infringes the patent in suit."

*Acco Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (citation

omitted). The HF350 does not infringe any asserted claims, independent or dependent, because the

HF350 is missing many claimed structures. This brief addresses only non-infringement of the

independent claims, but the asserted "dependent claims cannot be found infringed unless the

claims from which they depend have been found to have been infringed." *Jeneric/Pentron, Inc. v.*

*Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (citation omitted).

**1.      The HF350 does not infringe the '264 or '021 patents.**

---

[38] Vanderhart Decl. at Ex. 1 ¶¶ 81-87; Dylewski Decl. ¶¶ 11-14.
[39] Vanderhart Decl. at Ex. 1 ¶ 85; Rakow Decl. ¶¶ 4-5.

The '264 and '021 patents share the same specification (the '264 is the parent of the '021)[40] and common elements in the asserted claims. Because the asserted claims share limitations, Leer presents evidence of non-infringement of these claims together on a limitation-by-limitation basis. Plaintiffs assert infringement of claims 1, 5-11, 13-15, and 25 of the '264 patent and claims 31, 32, and 34 of the '021 patent. As outlined below, the HF350 lacks many claimed structures in independent claims 1 and 25 of the '264 patent and independent claim 31 of the '021 patent.

### a.   No latch assembly on the bottom surface of the panels.

Each asserted claim of the '264 and '021 patents requires a "latch assembly" located on the **bottom surface** of at least one panel of the cover.[41] The annotated versions of Figs. 12 and 13 of the '264 patent below show the "latch assembly"[42] or "latch and release assembly"[43] annotated in tan color, located on the structure disclosed in the patents as panel's "bottom surface," which is annotated in pink.



---

[40] Ex. D (cover page at (63).

[41] *See* **Ex. C**, 8:2-37, 11:14 –12:19 (claims 1 and 25); **Ex. D**, 12:11-26 (claim 31). Plaintiffs' expert analyzed the terms "on a bottom surface" (**Ex. C**, claims 1 and 25) and "entirely on bottom surface" (**Ex. D**, claim 31) in the same way, so Leer does as well. The HF350 does not infringe regardless.

[42] **Ex. C**, 8:2-37 (claim 1); **Ex. D**,  12:11-26 (claim 31).

[43] **Ex. C**, 11:14 –12:19 (claim 25).

The '264 patent specification describes the panel's "bottom surface" with respect to the location of at least three structures: the latch assembly 180 (Fig. 13); a rubber bumper 194 (Fig. 12; 6:34-37); and a mounting plate 174 (Fig. 12; 5:9-10), as shown above. The specification states that a "mounting plate 174" is positioned "on a bottom surface of the front panel FP (*id.*), and that rubber bumper 194 "may be provided on a bottom surface of the second panel 102" (6:34-37; Fig. 12). Furthermore, claim 18 claims a "resilient element" or bumper "on a bottom surface of the second panel . . . to rest against the cab of the pick-up truck[.]" This is the same "bottom surface" of the panel shown above as for the latch assembly.

In addition, claim 1 of the '264 patent defines the latch assembly as having plungers and springs.[44] In contrast, as shown below, the HF350's latch assembly, including its springs and plungers, are not located on the bottom surface of the panel but instead are located inside the frame of each panel:[45]



Rakow Decl. Ex. 2 ¶¶ 275-276 (left image); Davis Inf. at 40, Rakow Decl. Ex. 2 ¶¶ 284-285 (right image).

To see the HF350's latch assembly, its panel shown below has been sliced in half:

---

[44] *See, e.g.,* **Ex. C**, 8:2-37 (claim 1); *id.* at 5:13-23.
[45] SOF ¶ 20; Rakow Decl. at Ex. 2, ¶¶ 270-347.



(Rakow Decl. Ex. B ¶ 62, ¶¶ 278-281 and accompanying images.)

Plaintiffs' expert, Dr. Davis, acknowledges that the HF350's latch assembly is located inside the frame.[46] Nevertheless, Dr. Davis argues that the inside of the frame is a "bottom surface" of the panel and that the frame has "multiple bottom surfaces."[47] Dr. Davis' "multiple bottom surfaces" theory and attempt to re-define the inside of the panel as the outside defies common sense and reality, and is at odds with the patents' disclosures. Dr. Davis never explains why a person of ordinary skill would view the inside of the frame to be the same as the panel's "bottom surface." Indeed, if the rubber bumper discussed above were inside the frame on Dr. Davis' newly defined "bottom surface," it would be useless in protecting the truck's rear windshield from the stacked panels leaning against it.

### b.  The HF350's "lip plate" is not the claimed "panel support surface."

Plaintiffs accuse the HF350's "lip plate" of being the claimed "panel support surface" on the rails of the '264 and '021 patents. The bed rails disclosed in the patents are attached to the truck sidewalls via a structure called a "lip plate."[48] The HF350's lip plate performs the same

---

[46] **Ex. K**, Davis Inf. ¶141 (image shown as LEER000210 (**Ex. S**)).
[47] **Ex. K** Davis Inf. at ¶¶ 141-45; **Ex. O**, Davis Dep. Tr. 97:25-99:21, 116:16-118:11.
[48] **Exs. C** and **D**, Fig. 5 (reference number 64); Rakow Decl. ¶¶ 468-485.

function of hanging the rail on the top edge of the cargo box sidewall (which the patents call the "box rail").[49] The lip plate of the HF350's rail also provides a surface for compressing seals on the bottom of the bulkhead assembly to keep water out of the cargo box (among other functions).[50] In neither the patents nor the HF350, however, do the lip plates support the panels to function as the claimed "panel support surface." There is no genuine dispute that the HF350's "lip plate" is not a "panel support surface."

A fundamental distinction between the HF350 and the '021/'264 patents' claims is that the HF350 is supported by the cargo box sidewalls, as shown below on the left, whereas the '021/'264 cover, annotated in pink below on the right, requires a rail, annotated in red, having a panel support surface, annotated in brown, inside and between the sidewalls.



**Rakow Decl.** at Ex. 2 ¶¶ 196-197, 477 (left image); **Ex. D,** Fig. 5; **Rakow Decl.** at Ex. 2 ¶¶ 470-471 (right image).

Because the patents' cover sits inside and between the sidewalls of the cargo box, panel support surfaces on the bed rails are needed to suspend the cover over the cargo box. As in Fig. 5

---

[49] Rakow Decl. at Ex. 2  ¶¶ 480-82.
[50] Rakow Decl. at Ex. 2 ¶ 49; *see also* SOF ¶ 6, 10.

of the '021 and '264 patents, shown above, the panel support surface 72 (brown), is part of the rail (red), and positioned below the top surface of sidewall of the cargo box (gray) and the lip plate (green). *See also* '264 patent claim 16 and 2:63-3:1 (disclosing both a lip plate and panel support surface and their different functions). Again, and in contrast, the HF350 cover sits on top of and is supported by the cargo box sidewalls. The lip plate does not support the HF350's panels.[51]

Shown below is a side-by-side comparison of the HF350 lip plate installed on the cargo box sidewall and lip plate 64 (green) from Fig. 5 of the patents. Both lip plates are used to hang the rails on the cargo box sidewalls, but neither supports their respective covers, as shown below.



Both lip plates from HF350 and 021/264 patent cover rails hang the rails from the cargo box and neither are panel support surfaces.

**Rakow Decl.** at Ex. 2 ¶¶ 471-475 (left image); **Rakow Decl.** Ex. 2 ¶ 480-82 (right image).

Because the HF350 is supported by the top of the sidewalls, no rail is needed to support the cover. Shown below on the left is the HF350 on the sidewalls. Shown below on the right is the HF350 cover installed on a truck bed with no rails. Even with the rails, including the lip plate, entirely removed, the HF350 is fully supported.

---

[51] Rakow Decl. at Ex. 2 ¶¶ 480-82.



(**Rakow Decl.** at Ex. 2 ¶¶ 44, 196-197, 476 (left images); *Id.* at ¶¶ 45-46, 198-199, 478-479 (right image).)

Because the rails, including the lip plate, do not support the cover, the lip plate on the HF350's rails cannot be a "panel support surface."

Even if the lip plate supported the HF350's panels, which it does not as shown above, during prosecution of the '021 patent, with reference to the "side rail comprising . . . a panel support surface" limitation the applicant expressly disclaimed tonneau covers that are supported on top of cargo box sidewalls.[52] Specifically, the applicant distinguished its claimed rail from that of the prior art stating that "the panels are supported on top of the box rail [i.e., cargo box sidewall], not on a separate rail attached to box rail [i.e., cargo box sidewall]."[53] The applicant supported this distinction by stating the "significance of this difference is discussed in the application at 0044." *Id.* In the application at ¶ 0044, the applicant represented that "the cover 100 supported [is] **only** on the side rails 60, (and in this case not on the box itself)" (emphasis added). *Id.* Distinguishing further, the applicant argued that "in Ericson, like Steffens et al, the cover sits on top of the box, not on side rails," and that "rail section 46 in Lathers also **has no panel support surface**, as it does not support any panel," "[r]ather, the panel is **supported on the seal 43 resting on the lip**

---

[52] *See* **Ex. T** at EULLEER0001115-1123.
[53] **Ex. T** at EULLEER0001117.

[of the sidewall] . . . ."[54] In other words, the '021 patent expressly disclaims tonneau covers that are supported on the top of the cargo box sidewall like the HF350.

Disclaimer thus applies to prevent the '264 and '021 patents from covering the very thing the applicant said its claims did not cover during prosecution. *See Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016); *Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1302 (Fed. Cir. 1999); *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (common terms in related patents have same meaning).

### c. No "cab panel fixed in place within the cargo box."

In addition to missing limitations described above, the HF350 does not infringe claim 25 of the '264 patent for because it does not have "a cab panel fixed in place within the cargo box." During prosecution, the Applicant argued that prior art covers cited by the Examiner were designed to "necessarily place[] the cover on top of the cargo box[,]" whereas the claimed cover sits on rails ***"in the cargo box, allowing the cover to be generally flush with the cargo box rails*."[55] (Emphasis added). As demonstrated above and explained by Dr. Rakow,[56] the HF350's cab panel is not within the cargo box but instead is suspended completely above it.[57]

### d. The HF350 has no "second resilient hinge strip"/"second resilient connector" connecting the second panel to the third as required by independent claims 1 and 25 of the '264 patent.

Claim 1 of the '264 patent requires "a second resilient hinge strip connecting the second panel to the third panel." Claim 25 of the '264 patent similarly requires "a second resilient panel connector strip connecting the second panel to the third panel." There is no dispute that the HF350

---

[54] **Ex. T** at EULLEER0001117, EULLEER0001120 (emphasis added); **Ex. AA** 8:28-37, Fig. 4; **Ex. Y; Ex. Z**.
[55] **Ex. Q** at EULLEER0000586.
[56] *See* Rakow Decl. at Ex. 2 , *e.g.*, at 15-18.
[57] Rakow Decl. at Ex. 2 ¶¶ 32-47.

17

has four hinges, three folding panels, and one narrow, fixed, bulkhead panel assembly.[58] Below are annotated top and side diagrams of the HF350 identifying its components and an image of the actual HF350 cover. The HF350's hinge (annotated in green below) arrangement is as follows: one between the first and second folding panels (panels shown in pink/gray); one between the second panel and a spacer (orange); one between the spacer and the third panel; and one between the third panel and the fixed bulkhead panel assembly (yellow/gray).[59] The image of the HF350 overlaying the drawings below, confirms the second hinge connects the second panel to a spacer. A third hinge connects the spacer to the third panel.

The HF panel arrangement as shown is second panel connecting to second hinge connecting to spacer connecting to third hinge connecting to third panel, NOT second hinge connecting to third panel.



(**Rakow Decl.** at Ex. 2 ¶¶ 58, 252-253, 260-264, 305-307 (top image), **Ex. S** (LEER000210); **Rakow Decl.** at Ex. 2 ¶¶ 252-253, 346-347 (center image); **Rakow Decl.** at Ex. 2 ¶¶ 35, 248, 304, 345 (right image).)

Claims 1 and 25 require that there be a "*second* resilient hinge strip" (cl. 1) or "*second* resilient connector"[60] "*connecting* the second to the third panel." (Emphasis added.) The HF350

---

[58] SOF ¶¶ 1-2.

[59] SOF ¶¶ 1-2, 4, 16-17.

[60] **Ex. C**, 11:14 –12:19 (claim 25).

does not have a second resilient hinge strip/connector connecting the second panel to the third panel. Instead, the HF350's second hinge connects to the second panel and a spacer.[61] A third hinge connects the spacer and to the third panel, as shown above.[62] Plaintiffs' expert Dr. Davis admits—as he must—that there is a spacer "pivotally attached to the second and third panels,"[63] but nevertheless claims that the HF350's second hinge connects the second panel to the third panels—despite two intervening structures, a spacer and third hinge.

A "panel" and a "spacer" are separately claimed structures (*see, e.g.*, '264 patent cl. 17), and the HF350 has a ***third*** hinge connecting to the spacer and third panel. Plaintiffs' infringement theory would render the distinction between these claim terms meaningless, which "would be inconsistent with case law." *Outside Box Innovations, LLC v. Travel Caddy, Inc.*, 260 F. App'x 316, 320 (Fed. Cir. 2008) (citations omitted). Here, like in *Travel Caddy*, "the inclusion of . . . additional element[s, a spacer and a third hinge strip,] changed the structure of the purported infringing object such that it could not infringe." *Id.* at 321.

The HF350 does not meet the limitation requiring that a second resilient hinge/resilient connector connect the second and third panels.

### e.  The HF350 has no "second spacer."

Claim 31 of the '021 patent requires "a second spacer pivotally attached to the third panel and to a fourth panel." *See* Fig 2 of the '021 patent below. The HF350 does not infringe this claim because it lacks a second spacer.

---

[61] The Court construed the term "resilient" to mean "capable of recovering original shape after deformation." D.I. 90 at 2 (**Ex. R**). There is no dispute that the spacer between the HF350's second and third hinges is not capable of recovering original shape after deformation.
[62] SOF ¶¶ 1, 2, 4, 16.
[63] **Ex. K**, Davis Inf. Rep. ¶ 262.

The image below compares the HF350 cover to the claimed patent cover, demonstrating that the HF350 (a three-panel cover) has only one spacer, whereas the '021 patent cover (a four-panel cover) requires two spacers. For that reason, the HF350 does not infringe the asserted claims of the '021 patent.



('021 patent Fig. 2 (left image); **Rakow Decl.** at Ex. 2 ¶¶ 497-500 (both images).)

As Figure 11 from the '021 patent below shows, a first spacer (annotated in orange) allows the first and second panels to fold parallel onto the third. Folding the first, second, and third panels in a parallel stack onto a fourth panel requires a second spacer (also annotated in orange). If there were only a hinge between the third and fourth panels and no second spacer, the panels' thickness would prevent them from folding flat onto the fourth panel without stressing the hinge.[64]



---

[64] Rakow Decl. at Ex. 2 ¶ 496.

(**Ex. D**, '021 patent Fig. 11; Rakow Decl. at Ex. 2 ¶¶ 495-496.)

The HF350's bulkhead panel assembly, in contrast, is positioned at the front of the truck bed. The three folding panels are not designed to, and indeed cannot, fold flat onto the bulkhead panel because the truck's cab is in the way.[65] Thus, there is no need for a second spacer to facilitate folding the three panels flat onto the bulkhead panel.

Even if the HF350's fixed bulkhead panel were wrongly considered to be the fourth panel of claim 31, the HF350 would still not meet the "second spacer" limitation because it has no structure between the third panel and the bulkhead panel that could be a "second spacer."

As shown below, no space is created by the fourth hinge between the central panel of the bulkhead assembly and the third panel. The rear edge of the central panel (annotated in gray) is located underneath the fourth hinge. Likewise, the front edge of the front frame member of the third panel (annotated in gray) is also located under the hinge. An ABS Striker (annotated in black), which keeps the panels vertically aligned when under load, engages both of the panels with no space in between. As a consequence, the fourth hinge, annotated in green, does not separate anything. It sits on top third and fourth panels and does not separate them.

---

[65] Rakow Decl. at Ex. 2 . ¶ 499.

(**Rakow Decl.** at Ex. 2 ¶¶ 513-521.)

Thus, the fourth hinge is not a "second spacer." It does not create "space" and does not "allow the panels to fold flat onto each other without stressing the hinge joint."[66] The Court should grant summary judgment that the HF350 does not infringe the asserted claims of the '264 or '021 patents.

## 2.    The HF350 does not infringe the '358 patent.

The '358 patent purportedly set about to solve a problem encountered when the weight of the stacked folding panels is supported by the frame of a fixed forward section, as opposed to being supported by an extruded central panel.[67] Each of the asserted claims requires a "forward section" having "a single-component construction between the front edge and the rear edge of the front section that is defined by the unitary extruded panel" "to support the stack [of folded panels] in an upward angled position."[68] This allows the "weight of the stack 54 [of rear panels to be] distributed over and carried by the entire panel section 34, as opposed to being mainly carried by a frame member 37 or portion along a forward edge of the forward section." (358 Patent, 6:5-11.) The Court construed the limitation to mean "the front-most section of the covering over the cargo box is an integrated part, as opposed to having a distinguishable central panel supported by frame member(s)."[69]

The HF350's extruded bulkhead panel does not support the folded stack as the claims require, nor is it an "integrated part" having "a single-component construction between the front

---

[66] **Ex. C** ('264 patent 3:45-49 (explaining function of spacers)).
[67] **Ex. B** ('358 patent 1:37-2:14; 6:1-19).
[68] **Ex. D**, 7:35–8 8:5 (claim 1). All other asserted claims (2, 3, 6, 8, 10, and 11) (**Ex. D**, 8:6-53) depend from claim 1.
[69] **Ex. R**, D.I. 90 at 15.

edge and the rear edge of the front section that is defined by the unitary extruded panel."[70]  To the contrary, the bulkhead panel assembly of the HF350 is a multi-component construction that has "a distinguishable central panel supported by frame member(s)" as expressly excluded by the Court. It includes three sections: one central panel, annotated in yellow, bounded by two load bearing, supporting side frame members/end caps,[71] annotated in gray, as shown in the image below.[72]

As shown below, the side frame members/end caps are supported by the top surface of a truck's cargo box sidewall. The central panel is attached to the frame members/end caps with fasteners and then suspended over top the cargo box. The interface between the central panel and side frame member is over the cargo box opening, not over the top of side walls themselves. Thus, the frame members/end caps fully support the central panel and the stack of folded panels.[73]

---

[70] **Ex. D**, 7:35–8 8:5 (claim 1).

[71] The "end caps" in the '358 patent's dependent claim 10 (**Ex. D**) serve a different purpose. They "close the opening into the interior of the extruded member 52 at the ends thereof," or they close the front and/or rear channels "to help retain the bulkhead seal 78 or the hinge member 42 . . .within their respective channel") (**Ex. D**, 5:22-30). As the patent makes clear, the claimed "end caps" of claim 10 do not support the claimed unitary forward panel. *See id.* 6:8-11 ("weight of the stack **54** is distributed over and carried by the entire panel section **34,** as opposed to being mainly carried by a frame member **37** or portion along a forward edge of the forward section").

[72] SOF ¶¶ 12-13; Rakow Decl. at Ex. 2 ¶¶ 51-53.

[73] Rakow Decl. ¶¶ 53-54; Dylewski Decl. ¶ 17.

23

(**Rakow Decl.** at Ex. 2 ¶¶ 53, 123.) The weight bearing end caps compress the seals located underneath the side frame members against the lip plate of the rails and the top surface of the cargo box sidewalls to prevent water leaking into the truck bed.[74]



(**Rakow Decl.** at Ex. 2 ¶¶ 54, 124.)

Because the bulkhead panel of the HF350 is not an integrated single-component construction structure that "support[s] the [folded] stack," there is no material factual dispute that the bulkhead panel of the HF350 does not infringe any asserted claim of the '358 patent. The Court should therefore grant summary judgment of non-infringement of the '358 patent.

**C.    Plaintiffs' doctrine of equivalents ("DOE") argument fails.**

---

[74] Rakow Decl. at Ex. 2 ¶ 49; SOF ¶ 10.

It is well settled that each element of a claim is material and essential, and that for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) (citation omitted). To find infringement under the DOE, the proposed "equivalent" must "substantially perform[] the same function to achieve the same result in the same way as the required limitation . . . ." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563 (Fed. Cir. 1996). "[A] patentee must . . . provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device or process, or with respect to the function, way, result test . . . to support a finding of infringement under the doctrine of equivalents." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

Plaintiffs rely upon the DOE for a single limitation—the "spacer" limitation in claim 31 of the '021 patent—and their expert provides only two sentences, devoid of the sufficiency required to establish equivalents, in support:

> In addition, the hinge strip identified above employs substantially the same function of providing space. Consequently, even if the HF350 was not found to literally infringe, it would infringe under the doctrine of equivalents.[75]

Dr. Davis does not provide any basis on which a reasonable jury could conclude a person skilled in the art would consider a "hinge strip" to be the equivalent of a "spacer," or how a hinge strip would accomplish the same purpose as a spacer the under function, way, result test. As explained by Leer's expert, Dr. Rakow, the HF350's hinge strips do not provide space or allow the panels to fold without stressing the joint as the patents require.[76] They thus are not equivalent to spacers.

---

[75] **Ex. K**, Davis Inf. Rep. ¶ 265.
[76] Rakow Decl. at Ex. 2  ¶¶ 492-522. *See also* SOF ¶¶ 1-2, 4, 15-18; **Ex. C** at 3:45-49.

Dr. Davis' "analysis" does nothing more than state that, if his literal infringement theory regarding "spacer" is wrong, then the HF350 must infringe by the doctrine of equivalents for the same reason. "[A] patentee who 'merely reassert[s] its literal infringement arguments as doctrine of equivalents arguments' fails to satisfy its burden, as such a tactic 'is insufficient to present a separate infringement theory' under DOE." *Osseo Imaging, LLC v. Planmeca USA Inc.*, No. CV 17-1386-LPS, 2020 WL 6318724, at *5 (D. Del. Oct. 28, 2020) (citation omitted). Lacking the "particularized linking evidence on a limitation-by-limitation basis," Plaintiffs' DOE theory is "insufficient and summary judgment is warranted." *Osseo*, 2020 WL 6318724, at *5.

Plaintiffs' DOE theory, if allowed, would also impermissibly eliminate any difference between the hinge strip and the spacer limitations disclosed in the '264 and '021 patents—effectively eliminating the "spacer" limitation. "[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury." *Warner–Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).*Id.* at

Moreover, Plaintiffs' DOE theory is barred by prosecution history estoppel. *See, e.g., PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) (arguments during prosecution claiming rectangular shape barred patentee from asserting infringement by U-shaped device under DOE). To overcome a prior art based rejection during prosecution of the parent '264 patent, the patentee argued that prior art "elastic hinge strips" cannot "reasonably suggest the spacer bars of amended claim 14," because the hinges were all "the same" and were "virtually identical and interchangeable."[77] "[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent

---

[77] *See* **Ex. Q** at EULLEER0000645.

application," especially when the two patents share the same specification as is the case here. *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (citations omitted).

Having argued that the claimed "spacer" cannot be a hinge strip, Plaintiffs cannot now claim the opposite. *See, e.g., Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1381–82 (Fed. Cir. 2007) (distinguishing prior art during prosecution history "produce[s] an estoppel against reading the [claim] term" to include the prior art element the applicant distinguished). For all these reasons, the Court should grant summary judgment of no infringement under the doctrine of equivalents.

## D.   The Court should grant summary judgment of no willful infringement.

Plaintiffs' willfulness theory fails as a matter of law for two reasons. First, "presuit knowledge" of asserted patents "alone is not sufficient to support a finding of willful infringement." *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 611–12 (D. Del. 2017). "Willfulness necessarily involves knowledge of the patent <u>and</u> of infringement[,]" and "the burden to prove willful infringement includes more than mere knowledge of the patent." *Evonik Degussa GmbH v. Materia, Inc.*, 305 F. Supp. 3d 563, 577 (D. Del. 2018).  Plaintiffs here only allege evidence of possible pre-suit knowledge of the asserted patents, and Plaintiffs' theory is therefore legally insufficient. *See Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. CV 18-1359-MN, 2021 WL 3033396, at *11 (D. Del. July 19, 2021) (citation omitted). Second, Plaintiffs' cannot show post-suit willful infringement because they cannot show more than "garden variety" infringement—if that. *See, e.g.*, *Intellectual Ventures I*, 234 F. Supp. 3d at 611-12 (granting summary judgment of no willful infringement where plaintiff "identifie[d] no evidence of behavior beyond typical infringement"); *Evolved Wireless, LLC v. Apple Inc.*, No. CV 15-542-JFB-SRF, 2019 WL 8128550, at *3 (D. Del. Feb. 19, 2019) ("Egregiousness cannot be found in 'typical' or

'garden-variety' infringement.") (citing *Halo Elecs. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016)).

To establish post-complaint willfulness, post-filing conduct "must still rise to the level of a 'wanton and malicious pirate.'" *Evolved Wireless*, 2019 WL 8128550, at *4 (citation omitted). There is no evidence of such conduct here. Throughout this lawsuit, Leer has maintained reasonable defenses of noninfringement and invalidity.[78] On this record, summary judgment of no willful infringement is appropriate. *See, e.g., Plastic Omnium Advanced Innovation & Research v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 422 (D. Del. 2018), *aff'd* 943 F. 3d 929 (Fed. Cir. 2019) (granting summary judgment finding defendants' post-suit sales of allegedly infringing products insufficient to support willful infringement where plaintiff did not seek preliminary injunction and defendant asserted reasonable defenses).

### E. Claims 1 and 25 of the '264 patent and claim 31 of the '021 patent are invalid as anticipated or rendered obvious by the '402 and '893 Wheatley patents.

The asserted claims from the '264 and '021 patents are all invalid as anticipated or rendered obvious by the prior art as discussed below and for the reasons discussed in Dr. Rakow's invalidity report.[79] Plaintiffs do not assert any additional argument or reasoning that the asserted claims, independent or dependent, are valid, other than those addressed herein.[80]

---

[78] *See, e.g.,* **Ex. U** (D.I. 10) (Leer's first Answer, affirmative defenses); **Ex. V** (D.I. 35) (Leer's First Amended Answer, Affirmative Defenses, and Counterclaims); **Exs. W** and **X** (Leer's interrogatory responses asserting invalidity and non-infringement at Nos. 5, 6, 8-11). The supporting declaration of Dr. Joseph Rakow is further support for Leer's reasonable defenses of noninfringement and invalidity.

[79] Rakow Decl. at Ex. 1 at ¶¶ 494-1062.

[80] **Ex. L**, Davis Reb. ¶¶ 247-301 (disputing only that the slam latch assemblies claimed in claims 1 and 25 and the extension plate claimed in claim 31 are not in the prior art and that dependent claim 11 is not invalid as indefinite under 35 U.S.C. ¶ 112 - addressed below).

The asserted claims are invalid under 35 U.S.C. § 102 as anticipated by U.S. Patent No. 6,024,402 ("'402 Patent) through its incorporation by reference of U.S. Patent No. 5,636,893 ("'893 Patent")—both "Wheatley" patents.[81] Alternatively, these claims are invalid as obvious under 35 U.S.C. § 103 based on that same combination of references or in combination with either one or both of U.S. Patent No. 5,427,428 ("'428 patent" or "Ericson") and/or U.S. Patent No. 4,313,636 ("'636 patent" or "Deeds"). All these patents qualify as prior art under 35 U.S.C. § 102(b) because each was published "more than one year prior" to the date of the application for the '021 Patent.[82] As set forth below and the parties agree, this technology is simple and has existed for decades.[83]

"A claimed invention is unpatentable if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art. *Edgewell*, U.S. Dist. LEXIS 230070, at *11 (citing 35 U.S.C. § 103; *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 13-14, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966)). "Whether the claimed subject matter would have been obvious at the time of invention to one of ordinary skill in the pertinent art is a question of law based on several underlying facts: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved need, and failure of others." *Id.* (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406).

"[T]he legal determination of obviousness[,] may include recourse to logic, judgment, and common sense and is appropriate for resolution on summary judgment or JMOL." *Id.* at *13

---

[81] Wheatley is also the inventor of the asserted 073 patent.  *See* **Ex. B**
[82] SOF ¶ 21-22.
[83] Rakow Decl. at Ex. 1 ¶¶ 19-21; **Ex. L**, Davis Reb. ¶ 38.

(internal quotation marks and citation omitted). When familiar items, have obvious uses, even uses "beyond their primary purposes," "a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle" using ordinary creativity. *KSR,* 550 U.S. at 402. Tonneau cover technology is simple and has existed for decades, requiring no special motivation to combine references, as shown below.

### 1.      The '402 patent incorporates by reference the '893 patent.

"[M]aterial not explicitly contained in the single, prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the document." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (citation omitted). Matter is incorporated by reference when the host document "contain[s] language clearly identifying the subject matter which is incorporated and where it is to be found." *Id.* at 1346.

The '402 patent at 5:4-10 states that it incorporates by reference "details concerning the construction of the hard panel tonneau cover" disclosed in U.S. Pat. No. 5,636,893.  The '402 patent describes the '893 patent cover as "a hard panel tonneau cover . . .  attached to a side rail 128. The hard panel tonneau cover 130 is made of a plurality of panels 132 coupled together by hinges as shown in FIG. 14."

Plaintiffs merely dispute the extent of the content incorporated from the '893 patent, but the dispute is immaterial.[84] The combination of those patents at least renders obvious claims 1 and 25 of the '264 patent and claim 31 of the '021 patent under 35 U.S.C. § 103. It would have been obvious for a person of ordinary skill to review the '893 and '402 patents together because one incorporates the other. Whether anticipated or obvious, the claims are invalid.

### 2.      All independent claim limitations are disclosed in the '402/'893 patents.

---

[84] *See* **Ex. L**, Davis Reb. ¶ 359.

Because the '264 and '021 patents' independent claims share limitations, each set of limitations is grouped together by type and addressed below. For ease of reference, tables assigning letters to the various limitations of the three claims are set forth below.

| Claim 1 of the 264 Patent | |
|---|---|
| | 1. A cover assembly for a pick-up truck cargo box, comprising: |
| **[A]** | a first rail attachable to a first side of the cargo box; |
| **[B]** | a first latch channel in the first rail; |
| **[C]** | a second rail attachable to a second side of the cargo box; |
| **[D]** | a second latch channel in the second rail; |
| **[E]** | a cover attachable to the first and second rails, with the cover including: |
| **[F]** | a first panel; |
| **[G]** | a second panel; |
| **[H]** | a first resilient hinge strip connecting the first panel to the second panel and allowing the first panel to pivot relative to the second panel; |
| **[I]** | a third panel; and |
| **[J]** | a second resilient hinge strip connecting the second panel to the third panel and allowing the second panel to pivot relative to the third panel; |
| **[K]** | a slam latch assembly on a bottom surface of each of the panels, with substantially each slam latch assembly including first and second plungers urged outwardly by first and second springs into latching positions wherein the first and second plungers extend at least partially into the first and second latch channels, respectively, for latching the panels into engagement with the first and second rails; |
| **[L]** | a release mechanism associated with each slam latch assembly for releasing each panel from the first and second rails by moving the first and second plungers inwardly into release positions, wherein from the first and second plungers are withdrawn from the first and second latch channels; and |
| **[M]** | with movement of each panel into engagement with the first and second rails causing the first and second plungers to automatically move momentarily inwardly into the release positions, and then move outwardly into the latching positions. |

| Claim 25 of the 264 Patent | |
|---|---|
| | 25. A cover for a pick-up truck cargo box having left and right side box rails, and with multiple spaced apart stake pocket openings in the left and right side box rails, comprising: |
| **[A]** | a left side cover rail attached to the left side box rail; |
| **[B]** | a right side cover rail attached to the right side box rail; |

31

| [C] | a first panel, a second panel, and a third panel; |
|---|---|
| [D] | a latch and release assembly on a bottom surface of each of the first, second and third panels that automatically latches the panel into the left and right side cover rails via movement of the panels towards the side cover rails; |
| [E] | a first resilient connector pivotally connecting the first panel to the second panel; |
| [F] | a second resilient connector pivotally connecting the second panel to the third panel; |
| [G] | a cab panel fixed in place within the cargo box, at a front end of the cargo box; |
| [H] | a third resilient connector connecting the third panel to the cab panel; |
| [I] | the first, second, third and cab panels unfolded covering substantially the entire cargo box, but not the stake pocket openings; and |
| [J] | the first panel foldable over onto the second panel, and with the first and second panels together foldable over onto the third panel, with the first, second and third panels substantially parallel to each other, and |
| [K] | with the first, second and third panels together foldable through or past an upright position relative to the cab panel, and leaving only the cab panel covering the cargo box. |

| Claim 31 of the 021 Patent | |
|---|---|
| | 31. A cover assembly for a pick-up truck cargo box, comprising: |
| [A] | first and second side rails with each side rail comprising: a clamp plate, a panel support surface, and an extension plate adjacent to a front end of the rail; |
| [B] | a folding cover attached to the extension plates and supported by the first and second rails, with the folding cover including: |
| [C] | a first panel pivotally attached to a second panel, a first spacer pivotally attached to the second panel and to a third panel; |
| [D] | a second spacer pivotally attached to the third panel and to a fourth panel, with the fourth panel secured to the extension plates; and |
| [E] | a latch assembly entirely on a bottom surface of one or more of the first, second and third panels. |

The "'402/'893 patents" include all limitations of the asserted independent claims of the

'264 and '021 patents.

        a.     **No reasonable jury could find tonneau cover assembly for a pick-up truck cargo box and panels not disclosed.**

The '402/'893 patents include limitations [F], [G], [I] of independent claim 1; [C], [G], [I], [J], [K] of independent claim 25; and [B], [C], and [D] of independent claim 31 as shown below in figures from the '893 patent:



('893 patent Figs. 1 and 2; Rakow Inv. ¶¶ 685-692, 769, 877, 982-983, 1015-1029.) Figure 1 of the '893 patent above discloses a folding cover with first, second, and third panels, annotated in pink. Figure 2 above confirms this prior art also includes a first panel 30 pivotally attached to a second panel 28 via hinge 36; a second hinge 34, which Plaintiffs claim is also a spacer[85], pivotally attached to second panel 28 and third panel 26; and a third hinge 32—which Plaintiffs claim is a spacer—pivotally attaches the third panel to the fourth panel 24.[86]

### b. No reasonable jury could find tonneau cover attachable to installed rails not disclosed.

The '402/'893 patents also disclose limitations [A], [C] and E of claim 1 (see next section for limitations [B] and [D]); [A], [B] of claim 25; and [A] [B], [D] of claim 31, as shown below:

---

[85] Plaintiffs' expert opines that "a spacer" is "any object that creates space." **Ex. K**, Davis Inf. at ¶ 264. The '893 Patent does not expressly identify any structure as a "spacer." However, under the views advanced by Plaintiffs', the '893 Patent discloses a "first spacer" according to claim 31.

[86] *See also* **Ex. BB**, 893 patent 3:9-25; 7:1-8:1 (describing the panels pivotally attached via hinges).



('893 patent Figs. 5 and 6; Rakow Invalidity Rep. ¶¶ 732-733, 818-819, 822, 841-843, 978-981, 1003-1009, 1015-1029, 1059.)

Both Figs. 5 and 6 from the '893 patent, shown above, confirm this prior art reference discloses a cover annotated in pink (Fig. 6) and clear (Fig. 5) attachable to first rail and second rails, annotated in red, of limitations [A], [C], and [E] of claim 1. The '893 patent also discloses left and right side rails are attached to the box rail from limitations [A] and [B] of claim 25. For limitations [A], [B], and [D] from claim 31, the '893 patent discloses "first and second side rails with each side rail comprising: a clamp plate (annotated in red), a panel support surface (annotated in tan), and an extension plate (annotated in orange) adjacent to a front end of the rail" of limitation [A]; the "folding cover (annotated in pink) attached to the extension plates (annotated in orange) and supported by the first and second rails (annotated in red/tan)"[87] of limitation [B]; with "the fourth panel secured to the extension plates (annotated in orange)" of limitation [D].

---

[87] Like the HF350, the '893 Patent cover is also supported by the side walls of the cargo box—not the rails. (**Ex. BB**) '893 Patent, 2:66-3:8 ("The cover 10 is supported upon the side walls" of the cargo box). Nevertheless, because Plaintiffs contend that the lip plate of the HF350M corresponds with "the panel support surface" of claim 31. The same view that Plaintiffs advance for infringement also applies for invalidity. "It is axiomatic that claims are construed the same way for both invalidity and infringement." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313,

c.   **No reasonable jury could find latch and release assemblies not disclosed.**

Figure 13 of the '402 patent (below) discloses a "latch assembly" (annotated in brown/green) on a bottom surface of one or more of the first, second, and third panels (annotated in pink/blue), as well as the installed rails with latch channels for latching the panels, as required by limitations [B], [D], [K], [L], [M] of claim 1; [D] of claim 25; and [E] of Claim 31:



(**Ex. CC** ('402 patent) Fig. 13; **Rakow Decl.** at Ex. 1 ¶¶ 619-623, 693-694, 1015-1029.)

The slam latch assembly disclosed in the '402 patent includes a latch (green) that is biased by a spring (brown). The latch is biased towards a latch channel of the rail (red).[88] ("The latch mechanism 146 has a spring biased catch 148 which is received into the inwardly open channel 150 of the side rail.") The latch assembly is located on the bottom surface of the cover panel (blue).

Plaintiffs' concede that the '402 patent discloses a slam latch assembly on the bottom surface of at least two of the three panels of the cover disclosed.[89] The patent's specification makes clear it discloses a slam latch on every panel's bottom surface. (*See* '402 patent 5:4-7, 20-21 and

---

1330 (Fed. Cir. 2003). As such, at least under Plaintiffs' view, the '893 Patent discloses limitation [B].

[88] *See* **Ex. CC**, 402 patent, 5:20-27

[89] **Ex. L**, Davis Reb.at ¶ 218 ("at best this means that the latch mechanism is only on two panels and the claims require that the latch mechanism be located on all three panels").

Fig. 13 (disclosing "a plurality of panels 132" with "a latch mechanism 146 . . . on the underside a panel 132,) which Fig. 13 shows is a slam latch).

Even if the '402 patent did not disclose "a slam latch assembly on a bottom surface of each of the panels," this would have been obvious. *See, e.g., B/E Aerospace, Inc. v. C&D Zodiac, Inc.*, 962 F.3d 1373, 1379-80 (Fed. Cir. 2020), *cert. denied sub nom. B/E Aerospace, Inc. v. C&D Zodiac, Inc.*, 141 S. Ct. 1127 (2021). As the Examiner noted during prosecution, a slam latch *per se* "holds no patentable weight for it is known to interchange latching systems . . . only involving routine skill in the art."[90] Plaintiffs do not argue that there were unexpected results from including this feature or that the prior art taught away from adding a slam latch to every panel. *Edgewell*, U.S. Dist. LEXIS 230070, at *22 ("evidence must show either that the claimed [feature] produced unexpected results or was somehow discouraged in the prior art").

In *B/E Aerospace*, the Federal Circuit affirmed a finding of obviousness because (1) duplicating a known feature (adding "a second recess") "was nothing more than the predictable application of known technology;" and (2) "it would have been a matter of common sense to incorporate a second recess in the Admitted Prior Art[] combination." *Id*.; *see also KSR., 550 U.S. at 416* ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.") Plaintiffs point to no unexpected results or difficult technological accomplishment in adding something as simple as an additional slam latch to a third panel of a tonneau cover. Like in *B/E Aerospace,* adding a slam latch to a third panel requires only "the predictable application of known technology." 962 F.3d at 1379-80.

      **d.**    **No reasonable jury could find resilient hinge strip/connector not disclosed.**

---

[90] **Ex. Q** at EULLEER0000670.

The Court construed "resilient hinge strip" to mean: a "strip at the joint made of material that is capable of recovering original shape after deformation."[91] The construction of "resilient connector is almost the same: "a connector made of material that is capable of recovering original shape after deformation." *Id.*

The '402/'893 patents disclose a resilient hinge strip/connector that connects one panel to another panel to allow the panels to pivot relative to each other according to limitations [H] and [J] of claim 1 and [E], [F], and [H] of claim 25 as shown in Figs. 7 and 8 of the '893 patent below:



(**Ex. BB**, '893 patent Figs. 7 and 8; **Rakow Decl.** at Ex. 1 ¶¶ 798-799, 1015-1029.)

For infringement, Plaintiffs assert that there is no difference between a "resilient hinge strip" and a "resilient connector." Therefore, the same also applies for invalidity. *See Amgen*, 314 F.3d at 1330. The '893 patent discloses hinges joining the hard panels of the cover together and having a "pivot axis" across the cargo box, enabling "the cover to be folded in an accordion-style fashion by pivoting the panels about the hinges" and stacked to allow the user to "access the cargo area."[92] Each hinge includes gears and a "seal 240 [that] is a long flexible member."[93] The seal

---

[91] **Ex. R**, D.I. 90 at 2.
[92] **Ex. BB**, 893 patent at 3:9-25.
[93] **Ex. BB**, 893 patent at 7:1-27.

"bend[s] during rotation of the hinge," as shown in the '893 patent Figs. 7 and 8. The evidence cited above shows the resilient hinge (seal 240 (green)) deformed when the panels are folded on top of each other (FIG. 8) and recovering its original shape when the panels are unfolded (FIG. 7).

Seal 240 is demonstrably a "strip (or connector) at the joint made of material that is capable of recovering original shape after deformation," and it allows the panels to pivot with respect to one another as the specification and Figs. 7 and 8 make clear.

> ### e.    No reasonable jury could find spacers not disclosed.

Plaintiffs' contend that the HF350's fourth hinge is a "spacer" for purposes of infringing Claim 31. Therefore, the '402 patent's hinges shown above are also spacers for purposes of invalidity. In addition, the tonneau cover from the Ericson '428 patent includes the same first and second spacers claimed in claim 31 of the '021 patent, rendering this claim invalid as obvious as shown below:



(**Ex. Y,** '428 Patent Fig. 3; **Rakow Decl.** at Ex. 1 ¶¶ 576-583, 697-703, 713-722, 730-734, 740, 745-747, 759, 768, 773-774, 778-781, 789-791, 820-822, 985-986, 993-994, 1034-1040.)

It would have been obvious for a person of ordinary skill to combine the Ericson '428 patent with the '402 patent because of the simple nature of this technology, which has been well-established for decades.[94] The elastic hinge of Ericson is a "familiar item[] hav[ing an] obvious

---

[94] Rakow Decl. at Ex. 1 ¶¶ 19-21; **Ex. L**, Davis Reb. ¶ 38.

use[]" such that a person of ordinary skill would "fit the teachings of [the] patents together like pieces of a puzzle" using ordinary creativity. *KSR,* 550 U.S. at 402.

         **f.**       **No reasonable jury could find stake pocket openings not disclosed.**

Limitation [I] of claim 25 of the '264 patent, which claims an unfolded cover that does not cover stake pocket openings on the truck's sidewalls, is not shown in the '402/'893 patents. However, the covers in those patents are supported on top of the cargo box sidewalls just like the HF350. Plaintiffs contend that the HF350 nevertheless meets limitation [I]. If true, then so do the '402/'893 patents' covers, which also are supported on top of the cargo box sidewall. The same broad view relied on by Plaintiffs for infringement applies equally for invalidity. *Amgen* 314 F.3d at 1330. Moreover, any prior art covers that are supported by panel support surfaces extending from rails inside the cargo box will, by default, not cover any stake pocket openings on the top of the cargo box sidewalls. Thus, the prior art Deeds '636 patent discloses this limitation, as shown below in Deeds Figs. 5 and 6:



(**Ex. DD**, '636 patent Figs. 5 and 6; **Rakow Decl.** at Ex. 1 ¶¶ 783-785, 871, 931-935, 949, 976-977, 999-1002, 1008, 1016, 1044, 1048, 1060.)

Because of the well-established nature of tonneau cover technology, it would have been obvious for a person of ordinary skill to combine the Deeds patent with the '402/'893 patents

because "[t]he combination of familiar elements according to known methods[,] even for uses "beyond their primary purposes," "is likely to be obvious when it does no more than yield predictable results." *KSR.,* 550 U.S. at 402, 416.

Thus, as shown above, including as confirmed by Dr. Rakow, under Plaintiffs' infringement analysis,[95] the '402/'893 patents anticipate all limitations of claims 1 and 25 of the '264 patent and claim 31 of the '021 patent.[96] Alternatively, the '402/'893 patents in combination with Ericson or Deeds render these claims obvious because the scope of the prior art is limited and well-understood, and a person of ordinary skill[97] would combine the simple teachings of these patents using ordinary creativity, *KSR,* 550 U.S. at 402, as set forth above (*Deere* factors 1-3).

Plaintiffs make no specific arguments regarding secondary considerations concerning the above limitations (*Deere* factor 4). Their vague, generalized secondary considerations (addressed below) are insufficient to defeat Leer's strong prima case of obviousness discussed below. *See, e.g.*, *W. Union Co. v. MoneyGram Payment Sys., Inc.,* 626 F.3d 1361, 1373 (Fed. Cir. 2010) ([W]eak secondary considerations generally do not overcome a strong prima facie case of obviousness."); *see also Leapfrog Enters., Inc. v. Fisher-Price, Inc.,* 485 F.3d 1157, 1162 (Fed. Cir. 2007) (affirming obviousness finding despite "substantial evidence of commercial success, praise, and long-felt need," where evidence was "inadequate to overcome a final conclusion that [a claim of the patent-in-suit] would have been obvious" based on "strength of the prima facie obviousness showing").

---

[95] If Plaintiffs' infringement positions regarding the limitations above are incorrect, then the HF350 does not infringe these patents.

[96] Rakow Decl. at Ex. 1 ¶¶ 685-696, 844-892, 1015-1029.

[97] A person of ordinary skill would have either a bachelor's degree in engineering and one to two years of general industry experience, or a high school degree or a trade school degree in engineering technology, with four years of experience in working with product design or manufacturing. Davis Reb. ¶¶ 34-36.

### 3.  '264 patent dependent claims are invalid.

During discovery, Leer presented evidence of the obviousness of the asserted dependent claims (all of which depend from claim 1).[98] In their response to Leer's contention interrogatory requesting evidence to rebut Leer's invalidity contentions, Plaintiffs offered no evidence and instead made only vague statements that the patents "demonstrate new and useful machines and are am improvement over tonneau covers and the associated rail and clamp systems," and that no prior art covers "feature the unique and novel features of the Asserted Patents."[99] In his rebuttal report on validity of the dependent claims, Dr. Davis only offered the same arguments discussed above regarding the independent claims.[100] For the same reasons, all the dependent claims are anticipated or rendered obvious by the prior art.

As the Examiner, who is a person of ordinary skill, concluded during prosecution, all of the asserted dependent claims were invalid as obvious in light of prior art combinations.[101] The Applicant never contested the Examiner's determination, and no separate arguments were made to support patentability with respect to any of these claims. In their response to Leer's contention interrogatory regarding validity and in their expert report, Plaintiffs failed to challenge these findings as well.[102] As Dr. Rakow opines, the prior art references cited by the Examiner, and other references render all the dependent claims invalid.[103]

**Claims 5-6**:     Claim 5 depends from claim 1 and claims "first and second rails [that] are substantially the same length as the cargo box." Claim 6 depends from claim 5 and claims "panel[s

---

[98] Rakow Decl. at Ex. 1 ¶¶ 723-843, 1052-1061.
[99] **Ex. EE**, Plaintiff's Response to Leer's Second Set of Interrogatories No. 16.
[100] **Ex. L,** Davis Reb ¶¶ 242-289.
[101] **Ex. Q** at EULLEER0000585-591, 606-11, 642; Rakow Decl. at Ex. 1  ¶¶ 723-893.
[102] **Ex. EE**, Plaintiff's Response to Leer's Second Set of Interrogatories No. 16.
[103] Rakow Decl. at Ex. 1 ¶¶ 723-893.

that] are substantially rectangular or tapered to match the shape of the cargo box." As the Examiner

noted and Dr. Rakow opines, these claims are obvious in light of the '428 Ericson patent, which,

in at least Fig 1, discloses rails substantially the same length of the cargo box, and, in at least 5:17-

24 and Fig. 8, discloses panels matching the shape of the cargo box.[104] In addition, during the

prosecution of the '021 patent, the Applicant stated that certain features "do not contribute to

patentability" in view of U.S. Patent No. 6,827,389, including: "rails having the same length as

the cargo box."[105] For this additional reason, the features of claim 5 were known in the art. The

'893 patent also anticipates these claims, disclosing a "rail structure extending the length of the

cargo box" ('893 patent, 4:7-8) and multiple rectangular folding panels.[106] Plaintiffs have not

disputed this.

    **Claim 7:** Claim 7 depends from claim 1 and further requires hinge strips attached to the

panels and "resilient cover strip[s]" attached to the sides of the panels and extending over the rails.

As Dr. Rakow opines, the '428 patent teaches the hinge strips of this claim.[107] As Dr. Rakow and

the Examiner found and neither the Applicant nor Plaintiffs rebut, U.S. Patent No. 6,340,194 and

other prior art teach left and right cover strips.[108]

    **Claim 8:** Claim 8 depends from claim 1. The limitations of dependent claim 8 are largely

the same or substantially similar to the resilient hinge strip and cover strip limitations discussed for

claim 7 with the addition of each of the panels having a honeycomb or synthetic core bounded by

---

[104] Rakow Decl. at Ex. 1 ¶¶ 723-731
[105] Rakow Decl. at Ex. 1 ¶¶ 723-31; **Ex. T** at EULLEER0001083-86).
[106] Rakow Decl. at Ex. 1 ¶¶ 732-733; *See also* Rakow Decl. at Ex. 1 ¶¶ 734-738 for additional prior art references anticipating these claims.
[107] Rakow Decl. at Ex. 1 ¶¶ 744-47 (hinge strips according to [this] limitation . . . are shown at Figs. 4 and 5 of the 428 patent).
[108] Rakow Decl. at Ex. 1 ¶¶ 739-743, 748-756 ("Rubber tubing, strips, or gaskets were also commonly positioned along the perimeter of the cargo box."); *id.* at ¶748 (**Ex. FF**, Muirhead 13:18-20 discloses "a gasket 68 for sealing within channel 168.")

top and bottom sheets and surrounded by left, right, front, and rear frames. As Dr. Rakow opines, and the Examiner found, "[i]t would have been obvious to one with ordinary skill" to use the cover strip taught by Muirhead on the device of Ericson . . . to insulate the cover."[109] Neither the Applicant nor Plaintiffs contested this finding, conceding that the added features of this claim were known in the prior art.[110] That Dr. Rakow confirms that various references show this limitation, including the 635 patent stating that "each panel is surrounded by C-frame 26 which protects the edges of the core and adds further rigidity to the panels."[111]

**Claim 9:** Claim 9 depends from claim 1 and further requires that the first and second rails have "a panel support surface positioned to support the cover with a top surface of the cover substantially flush with an upper surface of the cargo box." The Deeds 636 patent discussed above (section III.E.2(f)), including Fig. 5, demonstrates that flush style tonneau covers were known as early as 1979.[112] Plaintiffs have not disputed this.

**Claim 10**: Claim 10 depends from claim 1 and further requires: "a support bar associated with the first hinge strip." As Dr. Rakow opines, "the '893 patent discloses a support bar and a hinge strip, as can be seen at items 228 and 240 shown in Fig 7 ('seal 240' annotated in green and 'channel member 228' annotated in red)."[113] (Fig. 7 section III.E.(2)(d) above); *see also id.* at 7:1-12 ("Channel member 228 . . . holds the two gear sectors [of the hinge] in mesh with one another").

As Dr. Rakow and the Examiner found, and neither the Applicant nor Plaintiffs dispute, U.S. Patent No. 6,422,635 ("Steffens") also discloses "support strips" to reinforce the hinges.[114]

---

[109] Rakow Decl. at Ex. 1 ¶ 761.
[110] Rakow Decl. at Ex. 1 ¶¶ 762-63.
[111] Rakow Decl. at Ex. 1 ¶¶ 757-774.
[112] Rakow Decl. at Ex. 1  ¶¶ 775-789 (discussing this and other invalidating prior art).
[113] Rakow Decl. at Ex. 1  ¶¶ 798-99.
[114] Rakow Decl. at Ex. 1  ¶¶ 792-797; *see also id.* ¶¶ 800-803 (discussing other invalidating prior art).

**Claim 11**: Claim 11 depends from claim 1 and further requires an extension plate on each of the rails, a cab panel, a first resilient hinge strip connecting the first panel to the cab panel and allowing the first panel to pivot relative to the cab panel, and fasteners attaching the cab panel to the extension plate on each of the rails. First, as Dr. Rakow opines, claim 11's requirement that the first resilient hinge strip" is "connecting the first panel to the cab panel" is contrary to claim 1 where the "first resilient hinge strip" is connecting the first panel to the second panel. a person of ordinary skill in the art would understand that "first resilient hinge strip" cannot be in two separate places at one time. Thus, claim 11 of the '264 patent is indefinite and lacks written description.[115] Under 35 U.S.C. § 112(d), a dependent claim must further restrict the independent claim from which it depends. Claim 11 does not meet that requirement because it expands the claim 1 rather than restricting it.[116]

Second, as Dr. Rakow and the Examiner found, and neither the Applicant nor Plaintiffs dispute, U.S. Patent No. 6,217,102 ("Lathers") "discloses an extension plate (16) on each rail and a cab panel (6, Figure 5) and fasteners attaching the cab panel to the extension plate on each rail[.]"[117] The '893 patent also discloses these features at 6:13-33 and Fig. 6.[118]

**Claim 13**: Claim 13 depends from claim 1 and further requires: "wherein the first resilient hinge strip is seamless." As Dr. Rakow opines, "in general, hinge strips made of flexible material, such as rubber, are seamless," and it is thus not surprising the Examiner found this claim invalid

---

[115] Rakow Decl. at Ex. 1 ¶¶ 809-12.
[116] Rakow Decl. at Ex. 1 ¶ 813.
[117] Rakow Decl. at Ex. 1 ¶¶ 806, 814 (quoting the Examiner).
[118] Rakow Decl. at Ex. 1 ¶¶ 818-19; *see also id.* at ¶¶ 817-822 (discussing other invalidating prior art).

over the prior art—as does Dr. Rakow (citing numerous prior art patents, including Ericson '428 (element 30a)).[119]  Neither the Applicant nor Plaintiffs dispute this.[120]

**Claim 14**: Claim 14 depends from claim 8, which depends from claim 1, and further requires "wherein the top sheet will expand when heated to create an upward bowing effect." The Examiner noted, and the Applicant did not contest, that "the panels will bow when the top is heated and the bottom remains cool for it is a law of thermal expansion and compression."[121] As Dr. Rakow opines, "the additional subject matter claimed by claim 14 would have been obvious based on prior art related to composite panels in addition to the recognition of known scientific principles." [122] Plaintiffs have not disputed this.

**Claim 15**: Claim 15 depends from claim 8, which depends from claim 1, and further "wherein the side frames comprise extrusions, and wherein the frames are attached to the core by adhesion, without use of through fasteners." As Dr. Rakow opines and the Examiner found, the Steffens '635 patent panels are described as being "surrounded by C-frame 26 which protects the edge of the core and adds further rigidity to the panels," and that "[t]he frame 26 can be secured by suitable adhesives."[123] Neither the Applicant nor Plaintiffs dispute this. The '893 patent at 3:36-49 and other prior art also disclose frames attached to a honeycomb or synthetic core by adhesion.[124]

The same motivation to combine that applies to the independent claims applies here in light of the simple, established technology. Plaintiffs do not offer any evidence regarding the dependent

---

[119] Rakow Decl. at Ex. 1  ¶¶ 823-829.
[120] Rakow Decl. at Ex. 1  ¶¶ 824-826 (applicant failed to contest or assert separate arguments to support patentability).
[121] Rakow Decl. at Ex. 1  ¶¶ 831-33.
[122] Rakow Decl. at Ex. 1  ¶¶ 834-35.
[123] Rakow Decl. at Ex. 1  ¶¶ 836-40.
[124] Rakow Decl. at Ex. 1  ¶¶ 841-43.

claims (other than claim 11) separate from their independent claim arguments. Thus, as shown above, all the asserted dependent claims of the '264 patent are invalid.

### 4.      '021 patent dependent claims are invalid.

The spring and plunger latch assembly recited in claim 32 was widely known in the art, as discussed above, which the applicant conceded during prosecution.[125] Claim 34's requirement of a "clamp plate substantially perpendicular to the panel support surface" is rendered obvious based on the same combinations presented with respect to claim 31, with or without Deeds '636.[126]

For the reasons cited above, [127] all asserted claims of these patents are invalid.

### F.      The Court should exclude the opinions of Plaintiffs' technical expert Dr. Davis concerning the availability and acceptability of non-infringing alternative tonneau covers and secondary considerations of non-obviousness.

A party offering an expert's testimony must show that the expert's opinions are based on "methods and procedures of science" rather than "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). Neither *Daubert* nor the Rules of Evidence requires a court to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### 1.      Dr. Davis has no expertise to opine on availability or commercial acceptability.

Dr. Davis opines that various non-infringing alternative tonneau covers, not the re-design of the HF350 addressed above in section III.A, were unavailable to Leer or commercially unacceptable. But, Dr. Davis has no independent expertise or factual foundation for doing so. Courts routinely exclude testimony and prevent experts from offering opinions on subjects that

---

[125] **Ex. T** at EULLEER0001084-86); Rakow Decl. at Ex. 1 ¶¶ 913-957, 1052-1061.
[126] Rakow Decl. at Ex. 1  ¶¶ 1058-1061.
[127] Dr. Rakow also opines how every element of every asserted claim the '264 and '021 patents is present in the prior art. See Rakow Decl. at Ex. 1 at ¶¶ 500-1062.

fall outside their expertise. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 865974, at *3 (D. Del. Mar. 7, 2013) (excluding technical expert's opinions that went beyond his computer science and call center expertise, including opinions on commercial success); *Lutron Elecs. Co.*, 970 F. Supp. 2d at 1241; *Rambus Inc.*, 254 F.R.D. at 604.

The absence of non-infringing alternatives or substitutes is one of the *Panduit* factors in a lost profits analysis. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978). Dr. Davis is a mechanical engineer.[128] He has no education or training that qualifies him to opine on the marketing of tonneau covers, or what features make a product acceptable to consumers.[129] He also does not rely on information from a competent fact witness for any of these opinions. Dr. Davis is therefore not "qualified as an expert by knowledge, skill, experience, training, or education" to opine on the availability of other tonneau covers to Leer or their acceptability consumers. Fed. R. Evid. 702. His opinions on these topics[130] should be excluded.

### 2.    Dr. Davis' opinions on secondary considerations lack foundation.

Dr. Davis identifies the following as evidence of nonobviousness of the '264,'021, and '358 patents: commercial success, copying by others, no independent invention, and long felt unresolved need.[131] Dr. Davis' opinions should be excluded as speculative and unreliable.

### a.    Dr. Davis' commercial success opinion lacks any nexus.

Dr. Davis opines that the BAK Flip series products (associated with the '264 and '021 patents) and the Undercover Flex Series products (associated with the '358 patent) demonstrate commercial success of these patents based solely on sales of those products, with no showing of

---

[128] **Ex. M**, Curriculum Vitae of Gregory Davis
[129] **Ex. O**, Davis Dep. Tr. 37:1-39:12.
[130] **Ex. K**, Davis Inf. ¶¶ 438-464; ¶¶ 512-13.
[131] **Ex. L**, Davis Reb. at ¶¶ 302-329, 411, 517-537.

nexus to patented features or reference to the market as a whole. *Id*. at 74, 96, 130. These opinions

should be excluded for Dr. Davis' lack of expertise to opine on this topic and his failure to tie sales

to any patented feature. *See, e.g., Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229,

1241 (D. Utah 2013) (holding that the technical expert was not qualified "to testify about the nexus

between the patented features and the products' commercial success"); *Rambus Inc. v. Hynix*

*Semiconductor Inc.*, 254 F.R.D. 597, 604 (N.D. Cal. 2008) (holding that experts with more than

33 years of experience in electrical engineering "lack[ed] the expertise needed to testify about the

commercial aspects of the inquiry").

It is well established that "[e]vidence of commercial success . . . is only significant if there

is a nexus between the claimed invention and the commercial success." *Wyers v. Master Lock Co.*,

616 F.3d 1231, 1246 (Fed. Cir. 2010). Dr. Davis never states which patented features allegedly

drove sales or were "a direct result of the unique characteristics of the claimed invention—as

opposed to other economic and commercial factors unrelated to the quality of the patented subject

matter." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1299–300 (Fed. Cir. 2012). "Even if

[Plaintiffs] could establish the required nexus, a highly successful product alone would not

overcome the strong showing of obviousness." *Media Techs. Licensing, LLC v. Upper Deck Co.,*

596 F.3d 1334, 1339 (Fed. Cir. 2010). Leer presents a strong showing of obviousness in the section

above. For all these reasons, Dr. Davis' opinions on commercial success should be excluded.

**b.    Dr. Davis identifies no products Leer allegedly copied and his cut and paste "opinion" is nonsensical.**

Dr. Davis never identifies any products that Leer allegedly copied. *See Wyers*, 616 F.3d at

1246 ("our case law holds that copying requires evidence of efforts to replicate a specific

product"). His "opinion" consists of speculation that Leer must have copied Plaintiffs' products

because: (a) unspecified products were on the market at unspecified dates; (b) Plaintiffs' witness

48

Mr. Herman "testified that he could not think of a hard folding tonneau cover that included a slam latch as claimed by the Patent prior to the Patent's invention;" and (c) Leer witnesses testified Leer conducts patent clearances.[132]

Dr. Davis' "unfiltered regurgitation" of snippets of evidence with no independent analysis based on any expertise should be excluded because it "adds nothing and therefore is not helpful to a jury." *XpertUniverse*, 2013 WL 865974, at *3. For example, Dr. Davis opines that evidence of copying the '358 patent, published 11/14/2017, somehow comes from the testimony of Mr. Herman regarding slam latches on each panel noted above.[133] The '358 patent does not even claim slam latches. This is a feature claimed in the '264 and '021 patents published years earlier. This is nonsense and in no way qualifies as an expert opinion.

Dr. Davis also wrongly opines that Leer supposedly copied Plaintiffs' products, because "Leer did not have a hard folding cover" prior to the HF350, which launched in July 2018.[134] Not only is Dr. Davis not an expert on what tonneau covers Leer sold when, but Dr. Davis separately admits that Leer sold another hard folding cover, the X2T, since at least 2016.[135] Dr. Davis is not "qualified by knowledge, skill, experience, training, or education," Fed. R. Civ. P 702, in the tonneau cover market, Leer's manufacturing processes, or inventory of tonneau covers. His opinion should thus be excluded.

### c.   Dr. Davis' opinion on no independent invention has no support.

Dr. Davis' single sentence relying on his opinion regarding commercial availability and acceptability of non-infringing alternatives[136] should be excluded for the reasons stated above.

---

[132] **Ex. L**, Davis Reb. ¶¶ 314-324, 411, 526-531.
[133] **Ex. L**, Davis Reb. ¶ 527.
[134] **Ex. L**, Davis Reb. ¶ 323
[135] **Ex. L**, Davis Reb. ¶¶ 468, 474.
[136] **Ex. L**, Davis Reb. ¶ 532.

**d.      Dr. Davis' opinion on long felt need is conclusory and nonsensical.**

Dr. Davis' "opinion" consists of three conclusory sentences related to the '358 patent only and has no bearing on the invalidity issues presented on summary judgment. Davis parrots material from a 2016 invention disclosure statement and refers to one of the '358 patent inventor's testimony to opine that there was a "need to redesign the a [sic] frame to reduce the number of parts, costs, and manufacturing issues." He next states, unintelligibly, that "[o]thers had tried to attach a panel others used a bolt clear through the panel which is not aesthetically pleasing, causes a leak point and deforms the panel."[137] Based on these two sentences, Dr. Davis' abstruse conclusion is that "Undercover limited the components while also easing manufacturing and resolving the issues identified above through the invention which included an extruded panel that contained the necessary features of the invention."[138] Dr. Davis offers specialized knowledge supporting this bald conclusion. His opinion should be excluded. *See XpertUniverse*, 2013 WL 865974, at *3.

## IV.      CONCLUSION

Leer respectfully requests that the Court grant summary judgment: that Plaintiffs are precluded from an award of lost profits; Leer does not literally infringe the '264, '021, and '358 patents, does not infringe any Asserted Patent under the doctrine of equivalents, and does not willfully infringe any Asserted Patent; and that the asserted claims of the '264 and '021 patents are invalid. Leer also requests that the Court exclude certain opinions of Plaintiffs' technical expert Dr. Davis as set forth above.

---

[137] **Ex. L**, Davis Reb. ¶¶ 533-35.
[138] **Ex. L**, Davis Reb. ¶ 535.

Dated:  December 13, 2021                    BARNES & THORNBURG LLP

                                             _/s/ Chad S.C. Stover_____
                                             Chad S.C. Stover (No. 4919)
                                             Regina S.E. Murphy (No. 5648)
                                             1000 North West Street, Suite 1500
                                             Wilmington, DE  19801
                                             Tel: (302) 300-3434
                                             Fax: (302) 300-3456
                                             Email:  chad.stover@btlaw.com
                                             Email:  gigi.murphy@btlaw.com

                                             D. Randall Brown (admitted *pro hac vice*)
                                             888 S. Harrison Street, Suite 600
                                             Fort Wayne, IN 46802
                                             Tel:  (260) 425-4674
                                             Fax: (260) 424-8316
                                             Email:  randy.brown@btlaw.com

                                             *Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

EXTANG CORPORATION, UNDERCOVER,
INC. and LAURMARK ENTERPRISES, INC.
d/b/a BAK INDUSTRIES,

        Plaintiffs,

    v.

TRUCK ACCESSORIES GROUP, LLC d/b/a
LEER, INC.,

        Defendant.

C.A. No. 19-00923-KAJ

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 13, 2021, I caused a sealed copy of ***Defendant's Opening Brief in Support of its Motion for Summary Judgment and to Exclude Certain Portions of the Opinions of Plaintiffs' Technical Expert*** to be served on the following counsel of record by FileShare link.

Geoffrey G. Grivner
BUCHANAN INGERSOLL
   & ROONEY PC
919 N. Market St., Ste 990
Wilmington, DE 19801
Geoffrey.grivner@bipc.com

*Counsel for Plaintiffs*

Steven A. Caloiaro
Jacqueline Lu
DICKINSON WRIGHT PLLC
100 W. Liberty St., Ste 940
Reno, NV 89523
scaloiaro@dickinsonwright.com
JLu@dickinson-wright.com

*Counsel for Plaintiffs*

H. Jonathan Redway
DICKINSON WRIGHT PLLC
International Square
1825 Eye Street, N.W., Ste 900
Washington, DC 2006
jredway@dickinsonwright.com

*Counsel for Plaintiffs*

Dated:  December 13, 2021

BARNES & THORNBURG LLP

*/s/  Chad S.C. Stover*

Chad S.C. Stover (No. 4919)
Regina S.E. Murphy (No. 5648)
1000 North West Street, Suite 1500
Wilmington, DE  19801
Tel: (302) 300-3434
Fax: (302) 300-3456
Email:  chad.stover@btlaw.com
Email:  gigi.murphy@btlaw.com

D. Randall Brown (admitted pro hac vice)
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Tel:  (260) 425-4674
Fax: (260) 424-8316
Email:  randy.brown@btlaw.com

*Attorneys for Defendant*