# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EXTANG CORPORATION, UNDERCOVER,
INC. and LAURMARK ENTERPRISES, INC.
d/b/a BAK INDUSTRIES,

      Plaintiffs,

      v.

TRUCK ACCESSORIES GROUP, LLC d/b/a
LEER, INC.,

      Defendant.

C.A. No. 19-00923-KAJ

**REDACTED VERSION**

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND TO EXCLUDE
<u>PORTIONS OF THE OPINIONS OF PLAINTIFFS' TECHNICAL EXPERT</u>**

Dated:  January 18, 2022
**Redacted Version filed on
January 25, 2022**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
Regina S.E. Murphy (No. 5648)
1000 North West Street, Suite 1500
Wilmington, DE  19801
Tel: (302) 300-3434
Fax: (302) 300-3456
Email:  chad.stover@btlaw.com
Email:  gigi.murphy@btlaw.com

D. Randall Brown (admitted *pro hac
vice*)
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Tel:  (260) 425-4674
Fax:  (260) 424-8316
Email:  randy.brown@btlaw.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ......................................................................................................... 1

    A.  Plaintiffs Failed to Dispute Leer's Statement of Undisputed Facts and, Therefore,
        Concede Summary Judgment. ......................................................................... 1

    B.  Plaintiffs Fail to Show Leer's Noninfringing Alternatives Were Unavailable,
        Warranting Summary Judgment of No Lost Profit Damages. ........................... 1

        1.  Plaintiffs waived the opportunity to opine on the four redesigns. ..................... 3

        2.  Plaintiffs have no competent evidence to rebut the availability of Leer's NIAs,
            even considering Dr. Davis' late declaration. ................................................. 3

    C.  Plaintiffs Fail to Show Leer Infringes the '264, '021, or '358 Patents, Warranting
        Summary Judgment of Non-Infringement. ..................................................... 7

        1.  The HF350 lacks a latch assembly on the bottom surface of the panels. ........... 7

        2.  The HF350's "lip plate" is not the claimed "panel support surface." ................ 8

        3.  The HF350 has no "cab panel fixed in place within the cargo box." ................ 9

        4.  The HF350 has no "second resilient hinge strip"/"second resilient connector"
            connecting the second panel to the third panel. ................................................. 10

        5.  The HF350 has no "second spacer." ................................................................ 11

        6.  The HF350 does not infringe the '358 patent. ................................................ 13

    D.  Plaintiffs DOE Theory is Legally Deficient. ................................................... 16

    E.  No Reasonable Jury Could Find Willful Infringement .................................... 17

    F.  The Asserted Claims of the '264 and '021 Patents are Invalid as Anticipated or
        Rendered Obvious by the '402 and '893 Wheatley Patents. ............................. 18

        1.  The '893 patent is incorporated by reference into the '402 patent. .................. 18

        2.  The '402/'893 patents disclose every limitation of claims 1 and 25 of the '264
            patent. ............................................................................................................. 18

        3.  The '402/'893 patents disclose every limitation of claim 31 of the '021 patent.
            ....................................................................................................................... 20

        4.  "Spacers" and "stake pocket openings" are disclosed in the prior art. .............. 21

        5.  There is no material factual dispute that the dependent claims of the '264 patent
            and the '021 patent are invalid. ........................................................................ 21

    G.  Dr. Davis is not qualified to opine on availability and acceptability or secondary
        considerations of non-obviousness. ................................................................. 22

III.    CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amgen Inc. v. Apotex Inc.*,
  712 F. App'x 985 (Fed. Cir. 2017) ............................................................................2, 10

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)........................................................................................19

*B/E Aerospace, Inc. v. C&D Zodiac, Inc.*,
  962 F.3d 1373 (Fed. Cir. 2020)........................................................................................20

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
  555 F.3d 984 (Fed. Cir. 2009)..........................................................................................13

*Bioverativ, Inc. v. CSL Behring LLC*,
  No. 17-914-RGA, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020) ...................................18

*Boston Scientific Corp. v. Nevro Corp.*,
  C.A. No. 16-1163-CFC, 2021 WL 4262668 (D. Del. Sept. 20, 2021) ...................................17

*Callaway Golf Co. v. Acushnet Co.*,
  576 F.3d 1331 (Fed. Cir. 2009).........................................................................................18

*Conceptus v. Hologic*,
  771 F. Supp. 2d 1164 (N.D. Cal. 2010) .....................................................................1, 6, 7

*Conn v. Bull*,
  307 F. App'x 631 (3d Cir. 2009) .........................................................................................1

*Cyrix Corp. v. Intel Corp.*,
  846 F. Supp. 522 (E.D. Tex. 1994) ....................................................................................15

*Grain Processing Corp. v. American Maize-Products Co.*,
  185 F.3d 1341 (Fed. Cir. 1999).................................................................................2, 5, 6, 7

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007).........................................................................................................21

*Lemelson v. United States*,
  752 F.2d 1538 (Fed. Cir. 1985).........................................................................................15

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*,
  970 F. Supp. 2d 1229 (D. Utah 2013)................................................................................23

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
 633 F. Supp. 2d 361 (E.D. Tex. 2009) ...................................................................15

*Mearin v. Folino*,
 654 F. App'x 58 (3d Cir. 2016) ..............................................................................1

*O'Connell v. Associated Wholesalers, Inc.*,
 558 F. App'x 286 (3d Cir. 2014) ............................................................................1

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)...............................................................................8

*In re Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007)..............................................................................18

*Smithkline Beecham Corp. v. Apotex Corp.*,
 365 F.3d 1306 (Fed. Cir. 2004)..............................................................................14

*Sonos, Inc. v. D & M Holdings Inc.*,
 297 F. Supp. 3d 501 (D. Del. 2017) (Bryson, J.) ..............................................22, 23

*Sprint Communs. Co. L.P. v. Cequel Communs.*,
 No. 18-1752-RGA, 2022 U.S. Dist. LEXIS 6775 (D. Del. Jan. 13, 2022)............................17

*Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*,
 674 F. App'x 130 (3d Cir. 2016) ............................................................................1

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996)................................................................................19

*Wyers v. Master Lock Co.*,
 616 F.3d 1231 (Fed. Cir. 2010)..............................................................................23

**Statutes**

35 U.S.C. § 287................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 56(e) ......................................................................................1, 6, 7

Fed. R. Evid. 702............................................................................................22, 23

## I.      INTRODUCTION

Looking beyond the mischaracterizations and *ad hominem* attacks in Plaintiffs' Opposition Brief (D.I. 198) and focusing on the admissible evidence and the law shows that the Court should grant summary judgment in favor of Leer and grant Leer's motion to exclude the unsupported portions of Plaintiffs' technical expert's opinions.

## II.     ARGUMENT

### A.      Plaintiffs Failed to Dispute Leer's Statement of Undisputed Facts and, Therefore, Concede Summary Judgment.

Because Plaintiffs failed to dispute Leer's Statement of Undisputed Facts ("SUF") as required by the Court's Scheduling Order (D.I. 14), Leer's facts are deemed undisputed.[1] Even if Plaintiffs had disputed Leer's SUF, they have no admissible evidence in opposition, as shown herein.[2] The Court should grant summary judgment in favor of Leer.[3]

### B.      Plaintiffs Fail to Show Leer's Noninfringing Alternatives Were Unavailable, Warranting Summary Judgment of No Lost Profit Damages.

Plaintiffs agree that they bear the burden to prove the absence of non-infringing alternatives ("NIAs").[4] Plaintiffs also agree the burden to show availability—and *only* availability—shifts to Leer only if an NIA was not on the market during the damages period.[5] If an alternative was not

---

[1] D.I. 14 at 9 ("Failure to respond to a fact presented in the moving party's concise statement of facts shall indicate that fact is not in dispute for purposes of summary judgment."). *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 131 n.1 (3d Cir. 2016); ; *Mearin v. Folino*, 654 F. App'x 58, 61 (3d Cir. 2016); *O'Connell v. Associated Wholesalers, Inc.*, 558 F. App'x 286, 290-91 (3d Cir. 2014); *Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009).
[2] Among other failures, Plaintiffs submitted unsworn expert reports (*see* sections II.B. and C. *infra*) to support their infringement and damages arguments. *See* FED. R. CIV. P. 56(e); *Conceptus v. Hologic*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010) (striking unsworn opinion).
[3] Sunday night January 16, Plaintiffs notified Leer that they "just became aware" they failed to file objections to Leer's SUF with their opposition brief two weeks earlier and intended to move for leave to do so. Murphy Decl. Ex. YYY. Leer will respond to the motion.
[4] *See* D.I. 198 n.3.
[5] *See* D.I. 198 at 5.

on the market, once Leer shows availability, Plaintiffs must come forward with "reliable economic proof" that the alternative was not acceptable.[6] Plaintiffs always have the burden on infringement.[7]

The Court should grant summary judgment that the                                      are non-infringing, because Plaintiffs offer no evidence that these NIAs infringe.[8]

The Court should also grant summary judgment that these NIAs were available and acceptable. Leer presents sworn declarations based on provable facts.[9] Plaintiffs proffer unsupported speculation belied by the evidence. First, all but one of the were on the market during the damages period, and the

.[10] There is no dispute that Leer's HF650 tonneau cover includes the                                      that do not infringe the '073 and '358 patents, respectively. And there is no dispute that the framing of the HF650's bulkhead panel is the same as the HF350's folding panels. Thus, for all of the damages period, this framing technology was on the market, and, at least from the launch of the HF650 in December 2019, the clamp was on the market. Similarly, the

was on the market for all of the damages period because it was common to many covers.[11] Regardless, Leer has shown availability for all the                          .[12]

---

[6] *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1355-56 (Fed. Cir. 1999).

[7] *See Amgen Inc. v. Apotex Inc.*, 712 F. App'x 985, 993 (Fed. Cir. 2017).

[8] In a one-sentence footnote, Plaintiffs claim "there is no dispute" that they have met their burden to show the absence of NIAs, citing their technical expert's report about other, different NIAs and a brand new Davis declaration addressing only the availability and acceptability of these four NIAs, but not infringement. *See* D.I. 198 n.3. Whether Plaintiffs have met their burden to show the absence of ***other*** NIAs is not before the Court, as neither party moved for summary judgment on those.

[9] *See* D.I. 160 at 4-10; D.I> 162 ¶ 5; D.I. 163-164.

[10] *See* D.I. 163 ¶ 9.

[11] *See* D.I. 163 ¶ 5; D.I. 164 ¶ 68.

[12] *See* D.I. 163; D.I. 164.

Plaintiffs point to the deposition testimony of their damages expert witness, Mr. Pinsonneault, and submit a brand new declaration from their technical expert witness, Dr. Davis. Plaintiffs waived the opportunity to submit expert opinion on these NIAs. Absent waiver, it is clear that these are not expert opinions but instead inadmissible speculation.

### 1. Plaintiffs waived the opportunity to opine on the

Plaintiffs failed to take the discovery to carry their burden of proving the absence of NIAs and cannot have a "do over" now. Having failed to serve a contention interrogatory to solicit evidence on NIAs from Leer, Plaintiffs tried to ask Leer's 30(b)(6) witness an improper contention topic. Plaintiffs were on notice at least as of June 15, 2021, when Leer objected to Plaintiffs' deposition notice, that such "topics are not allowed in this District."[13] Indeed, Plaintiffs made the same objection to some of Leer's 30(b)(6) topics.[14] Plaintiffs had time to serve a contention interrogatory prior to the August 12, 2021 fact discovery close and before deposing Leer's engineer Mr. Dylewski on August 3, 2021. They never did.

Instead, Plaintiffs asked legal contentions of Leer's witness, who was correctly instructed not to answer.[15] Rather than proceeding with properly framed fact questions, Plaintiffs requested a discovery dispute conference with the Court, which referred the issue to a Special Master (D.I. 135, 136). Plaintiffs never pursued the issue further, including after Dr. Vanderhart's October 15 report. They thus waived any right to supplemental discovery or expert opinions.

### 2. Plaintiffs have no competent evidence to rebut the availability of Leer's NIAs, even considering Dr. Davis' late declaration.

---

[13] *See* D.I. 200, Ex. RR (No. 7).
[14] D.I. 214, Ex. K (No. 8).
[15] *See* D.I. 167 at 3.

None of the testimony Plaintiffs point to is admissible evidence or creates a material fact dispute. Mr. Pinsonneault specifically testified he has no opinion on the

:

As Mr. Pinsonneault is not offering an expert opinion, his comments—with no supporting facts or grounding in personal expertise[17]—are not evidence. And, Dr. Vanderhart and Mr. Dylewski confirmed that Leer accounted for all

Dr. Davis' new declaration is also not admissible expert opinion. Like Mr. Pinsonneault, Dr. Davis has no expertise rendering him competent to opine on tonneau cover manufacturing (*i.e.*, whether the NIAs would be available) or features consumers find acceptable.[19] Dr. Davis also cites no countervailing evidence, whether from fact witnesses or documents. Dr. Davis' musings on how things "appear" to him or that he "disagree[s]" with Leer's evidence regarding manufacturing time and costs are not evidence.[20] The only admissible evidence is from Leer's engineer, damages expert, and the documents,[21] all of which show Leer appropriately accounted for the time and cost to bring the four NIAs to market.[22]

Importantly, though Dr. Davis and Mr. Pinsonneault both speculate that Leer's time frames and costs (including for the HF650's clamp and bulkhead panel that Leer actually makes) are

---

[16] Murphy Decl. Ex. VVV ( Pinsonneault Dep. Tr. 254:5-258:14) (emphasis added).

[17] *See* D.I. 181 Ex. 3 at 1-2 (stating Mr. Pinsonneault's professional qualifications).

[18] *See* D.I. 200 Ex. MMM (Vanderhart Dep. Tr.) at 61:4-8; 107:22-108:5. D.I. 163 ¶¶ 3, 6, 9, 12.

[19] *See* D.I. 160 at 46-50.

[20] *See* D.I. 198 Davis Decl., *e.g.*, ¶¶ 12-14.

[21] Plaintiffs are incorrect that the Kinfor spreadsheet Dr. Vanderhart and Mr. Dylewski rely on is responsive to Plaintiffs RFP No. 75. *See* D.I. 198 fn. 2. That RFP requests documents related to patent, not product, development. *See* D.I. 198, Ex. 46, RFP No. 75.

[22] *See* D.I. 160 at 4-10; D.I. 163; D.I. 164.

incorrect, neither offers any admissible evidence of alternate time and costs that would make the
unavailable. The parameters to develop these          render them available.
*See Grain Processing*, 185 F.3d at 1346 (alternative taking two weeks to develop was available).

Dr. Davis also offers no evidence to support that the

"would not be available to Leer."[23] Dr. Davis'
conclusion that          "would appear to infringe [dependent claim 26 of] the Access Patent"[24]
is not based on an analysis that                 would infringe. And with good
reason. The HF350 cannot infringe dependent claim 26 or independent claim 25, from which claim
26 depends, because the HF350 lacks the required "downwardly concave" rigid panels.[25]
Moreover, the "locking member" claimed in dependent claim 26 of the Access Patent is not even
the relevant             structure.[26] And, nothing in Dr. Davis' declaration rebuts Leer's
evidence that this option "was and is common among truck cover products," not limited to the
Lomax cover.[27] Plaintiffs thus have no evidence that the                 was not available.

Given these failures, the only admissible evidence is that all four NIAs were available to
Leer throughout the damages period.

Similarly, the only admissible evidence is that the NIAs were commercially acceptable.
Plaintiffs are wrong that "there is no record evidence" supporting the conclusion that these NIAs
are commercially acceptable. There is sworn expert opinion and the Dylewski declaration showing
just that. Dr. Vanderhart relies on Mr. Dylewski and Ms. Walker, Leer's Marketing Vice President,

[23] *See* D.I. 198 Davis Decl. ¶ 18.
[24] D.I. 198 Davis Decl. ¶ 18 concerning U.S. Patent No. 10, 189, 340 ('340 patent).
[25] Ex. WWW ('340 patent) claims 25 and 26.
[26] *See* Murphy Decl. Ex. WWW ('340 patent), *e.g.*, 2:54-65, 62:1-9 (describing "locking member 451*b*" of claim 26, whereas Dr. Davis mistakenly refers to "hooks 262" and "catches 264" not the subject of claim 26).
[27] D.I. 163 ¶ 7; D.I. 164, Ex. 1 ¶ 68.

both of whom are well-qualified to testify that consumers would find the                NIAs acceptable, where they provide the same functionality and appear in competing products.[28]

By contrast, Dr. Davis has no independent expertise in determining acceptability,[29] and offers no opinion based on facts from a percipient witness or any evidentiary source regarding what benefits consumers look for in purchasing tonneau covers. Lacking personal expertise, Dr. Davis' statements about what he "believe[s]" regarding acceptability are not evidence.[30] Neither is there a shred of evidence to support his speculation concerning the HF650's clamp.[31] The only admissible evidence is that incorporating the HF650's clamp                would be "easily accomplished with no change to the way the clamp functions."[32]

Plaintiffs' argument regarding whether the HF650 launched in December 2019 or early 2020 is immaterial. The HF350's folding panels are framed the same way as the HF650's bulkhead panel, meaning Leer had this technology when the HF350 launched.[33] Thus, Leer had "the equipment, know-how, and experience to implement" all of the NIAs during the damages period.[34]

In a final bid to save their lost profits theory, Plaintiffs tell the Court that *Mor-Flo* and its progeny stand for the proposition that a plaintiff is entitled to lost profits even when an accused infringer shows it had an available NIA.[35] That is not the law. If there are NIAs available to

---

[28] *See, e.g.*, D.I. 163 ¶¶ 2, 5-7, 10, 14; D.I. 164 ¶¶ 63, 65, 70, 72, 78, 82, 84; D.I. 201 ¶ 128.

[29] *See* D.I. 160 at 46-50.

[30] *See, e.g.*, D.I. 198 Davis Decl. ¶ 22 ("I do not believe this would be acceptable because there would be a security issue as one could pry the cover open where the latch does not exist, and security is a priority.").

[31] D.I. 198 Davis Decl. ¶¶ 10-11.

[32] D.I. 163 ¶ 2; D.I. 164 ¶¶ 63, 65 (same).

[33] *See* D.I. 164 ¶ 81 (I understand from Mr. Dylewski that an alternative would be to frame the forward section in the same manner that the other panels are framed."); D.I. 163 ¶ 11 (same).

[34] *Grain Processing*, 185 F.3d at 1348.

[35] The Court should also grant Leer summary judgment because Plaintiffs' damages expert report, D.I. 181, Ex. 3, is unsworn and inadmissible for summary judgment. *See* FED. R. CIV. P. 56(e); *Conceptus*, 771 F. Supp. 2d at 1179 (striking unsworn expert opinion).

competitors, a plaintiff may get lost profits based on its market share. But, when an accused infringer has available NIAs, this "preclude[s] any lost profits," because the allegedly infringing sales "were not sales that the patentee would otherwise have made . . . ."[36]

The Court should grant summary judgment of no lost profits based on the unrebutted evidence that Leer could have chosen to market NIAs during the damages period.

### C. Plaintiffs Fail to Show Leer Infringes the '264, '021, or '358 Patents, Warranting Summary Judgment of Non-Infringement.

#### 1. The HF350 lacks a latch assembly on the bottom surface of the panels.

The HF350's latch assembly is located inside the frame of each panel and not "on" the bottom surface of the panel.[37] Therefore, the HF350 does not infringe the asserted claims of the '021 and '264 patents.[38] Plaintiffs contort the term "on a bottom surface" to include all surfaces on, within, or around the panels. Nothing in the asserted patents supports this construction, and Plaintiffs cite nothing. Instead, they include an annotated drawing (D.I. 198, p. 11) where they flip the panel frame upside down and point to three surfaces and label them "bottom surface(s)." But the so-called bottom surface of the frame is actually at the top of the panel as shown below. Plaintiffs' Exhibits confirm this (D.I. 181, Exs. 23-24).



---

[36] *Grain Processing,* 185 F.3d at 1351, 1356 (internal quotation marks and citations omitted).
[37] *See* D.I. 165, Leer's SUF ¶¶ 19 and 20, which Plaintiffs did not dispute.
[38] Plaintiffs' infringement expert report, D.I. 181, Ex. 2, is also unsworn and inadmissible for summary judgment. *See* FED. R. CIV. P. 56 (e); *Conceptus*, 771 F. Supp. 2d at 1179.

7

The patents never describe these surfaces as bottom surfaces. Only a single "bottom surface" is described in the patents—the surface that "latch housing 188," "rubber bumper 194," and "mounting plate 174" are attached to.[39] Leer's position is not, as Plaintiffs' claim, an attempt to limit the claims to a preferred embodiment. Leer merely asks the Court to interpret the claims in light of the specification and express claim language.[40] The HF350's latch assembly is not "on" the bottom surface described and claimed in the patents.

Plaintiffs argue that the term is met because "the specification of the Asserted Patents stat[es] that the channel is part of the panel (D.I. 181, Ex. 22, 4:3-7)."[41] This misses the point. Leer has shown that the inside of the channel is not the bottom surface of the panel. Even if the Court accepts Plaintiffs' argument that the use of "a" before "bottom surface" means there can be one or more bottom surfaces, the inside of the frame is not a panel's bottom surface. A "bottom surface" must be on the "bottom" of the panel. The HF350's latch mechanism is not on the bottom—it is inside the panel, *above* the bottom of the panel and *above* the bottom surface of the panel.[42]

## 2.  The HF350's "lip plate" is not the claimed "panel support surface."

The HF350 is fundamentally different than the covers claimed in the '021 and '264 patents because the HF350's panels are completely above the top of the cargo box sidewalls rather than between and below the top of the cargo box sidewalls and supported by rails.[43] The claimed panels

---

[39] *See* D.I. 160 11-13. Plaintiffs dismiss this intrinsic evidence as having "no bearing on the issue at hand." D.I. 198 at 11. But they provide no explanation for this position. Intrinsic evidence is essential to interpreting the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (internal quotation marks and citations omitted).

[40] *See id.*

[41] D.I. 198 at 11.

[42] *See* D.I. 199 at 13-14.

[43] *See* D.I. 165, Leer's SUF ¶¶ 3, 9, which are unrebutted.

must be supported by rails because otherwise they would fall into the bed of the truck. The HF350's panels need no support from the rails because they rest on top of the cargo box sidewalls.[44] This difference precludes a finding that the HF350 infringes claim 31 of the '021 patent.[45]

Attempting to avoid this fundamental difference, Plaintiffs argue that "a panel support surface" need not fully support the panel. This argument is contrary to the position the applicant took during prosecution, where it disclaimed covers supported on top of cargo box sidewalls, and specifically argued that these prior art covers "**ha[ve] no panel support surface**," because the panel is **supported on the seal 43 resting on the lip** . . . ."[46]

Plaintiffs do not meaningfully rebut this argument. They claim that "Applicant simply made a statement that the limitation would not be met if the panel only was supported by the cargo bed."[47] But this fails to address the applicant's clear disclaimer of covers supported on a seal resting on the lip plate of the sidewall as in the HF350."[48] Therefore, there is no infringement.

Even if a "panel support surface" is not required to fully support the panels, the HF350 still lacks the element. The HF350's lip plate serves as a sealing surface to prevent water penetration,[49] just like the lip plate (64) in the patents, which distinguish between lip plate 64 and panel support surface 72.[50] Plaintiffs improperly conflate the HF350's lip plate with a panel support surface.

### 3. The HF350 has no "cab panel fixed in place within the cargo box."

---

[44] *See* D.I. 160 at 14-16 and accompanying figures.
[45] Plaintiffs did not dispute Leer's SUF, including SUF 9 stating that: "The cargo box sidewalls support the cover.  The rails do not support the cover. The HF350 i[s] fully supported by the top surface of the cargo box sidewalls (with or without the rails installed)."
[46] *See* D.I. 160 at 16-17.
[47] D.I. 198 at 13.
[48] *See* D.I. 160 at 16-17.
[49] D.I. 165, Leer SUF ¶ 10, which is uncontested.
[50] *See, e.g.,* D.I. 161 Ex. D ('021 patent) at Fig. 5, 3:3-8, and 4:34-44.

Plaintiffs failed to dispute (and have no evidence to dispute) that "the bulkhead panel assembly of the HF350 sits on top of the cargo box sidewall right behind the cab portion of the pickup truck" (Leer SUF 11) rather than "within the cargo box" as required by claim 25 of the '264 patent. Thus, the HF350 does not infringe. Plaintiffs cite to their expert's unsworn infringement report at ¶¶ 223-226 as evidence that this limitation is met. Those paragraphs of the Davis report do not address the "within the cargo box" limitation. Davis only opines that "the cab panel is fixed in place at the front end of the cargo box, and does not move."[51] He fails to address the "within the cargo box" limitation or show that the HF350 meets this limitation. Plaintiffs bear the burden of proof on infringement.[52] Their failure of evidence is fatal to their claim.

Plaintiffs claim they were not on notice that Leer might make this argument. But there is no serious debate that Leer has consistently argued that the HF350's cab panel is not within the cargo box but is instead suspended above it.[53]

### 4. The HF350 has no "second resilient hinge strip"/"second resilient connector" connecting the second panel to the third panel.

Again, Plaintiffs do not dispute the HF350's non-infringing "second panel-hinge-spacer-hinge-third panel" arrangement.[54] The language at issue—"a second resilient hinge strip connecting the second panel to the third panel"—is clear. It requires the second hinge connect to the third panel., whereas the HF350's second hinge connects to a spacer, as Plaintiffs concede. Thus, the Court should enter summary judgment of no infringement of claims 1 and 25 of the '264 patent.

---

[51] D.I. 181, Ex. 2 at ¶ 225.
[52] *Amgen*, 712 F. App'x at 993.
[53] *See*, *e.g.*, D.I. 162, Rakow Decl., Ex. 2 ¶¶ 32-47.
[54] *See* D.I. 165, Leer SUF ¶ 16, which Plaintiffs did not dispute. *See also* D.I. 169 at 5 (admitting the HF350's second hinge connects to a spacer). *See also* D.I. 160 at 18.

As Leer showed in its opposition to Plaintiffs' motion on this same claim element (D.I. 199 at 7-11), which is incorporated here by reference, Claim 1 describes an embodiment where a resilient hinge strip connects the second and third panels without the use of a spacer bar. Dependent claims 7 and 8, which depend from claim 1, specify exactly where on the panels the resilient hinge strip connects the second and third panels: the front edge of the second panel and the back edge of the third panel (claim 7) and the front frame of the second panel and the rear frame of the third panel (claim 8). Consistently, the Detailed Description describes hinge joints "which include a hinge strip 146" as shown in Fig. 8 *or* a "spacer bar 110 and 112, respectively, as shown in FIGS. 2 and 9-13."[55] Non–asserted independent claim 17 describes another embodiment using "spacer bars" "pivotally connecting the panels."[56] Independent claims 1 and 17 identify structurally distinct hinge strip and spacer bar arrangements between the panels. The intrinsic evidence thus shows the patentees restricted their claim coverage to one distinct embodiment in claim 1 (without a spacer bar) and to a different embodiment in claim 17 (with a spacer bar).

Plaintiffs argue that "the spacer does not prevent a connection between the panels."[57] But it does, because the spacer sits between the second panel and the third panel, preventing them from connecting. The patent claims a different structure than the HF350, precluding infringement.

### 5. The HF350 has no "second spacer."

Plaintiffs attempt to expand claim 31 of the '021 patent, which covers a four-panel cover with two spacers, to encompass the three-panel, one spacer HF350 cover. Claim 31 cannot be expanded in this way because Plaintiffs point to a hinge and not a "spacer."

---

[55] D.I. 169 at 6; D.I. 161, Ex. C ('264 patent at 3:41– 44 and 4:38 – 40).
[56] *See* D.I. 199 at 7-11.
[57] D.I. 198 at 16.

Plaintiffs argue that "neither the claims nor the Court's claim construction of 'spacer' prevent a hinge from providing space and therefore being a spacer."[58]  First, Plaintiffs proposed the plain and ordinary meaning of "spacer" as "**an object** dimensioned to allow the panels to fold flat onto each other, without stressing **the hinge joints**," based on the description in the patent's specification.[59] Plaintiffs' construction, and the specification, differentiate between "an object" and "the hinge joints," meaning they are necessarily different structures. Now, contrary to the construction proposed by Plaintiffs, adopted by the Court, indicated in the specification, and applied by their own expert,[60] Plaintiffs point to a hinge joint and not a separate structure as satisfying the "spacer" limitation.

Even if the Court accepted Plaintiffs new construction of "spacer," Plaintiffs' infringement theory fails because there is no space between the panels created by the hinge strip. Plaintiffs concede there is no space between the panels' "internals" but argue that "there is clearly space at the surface between the two panels."[61]  There is not. The hinge does not create any space between the panels; it merely sits on top of the third and fourth panels.[62]

As to whether the HF350's fourth hinge is capable of allowing the panels to fold flat onto each other, Plaintiffs are again wrong. Plaintiffs suggest a physical impossibility—the stack of panels crashing through the cab to lie flat on the cab panel. Further, a device that is merely "reasonably capable of being put into the claimed configuration is insufficient for a finding of

---

[58] D.I. 198 at 17.
[59] D.I. 49, Chart at 8. Ironically, Plaintiffs now criticize their prior construction as "improperly import[ing] a limitation from the specification." D.I. 198 at 17. The Court should reject this attempt to flip-flop positions.
[60] *See* D.I. 181 Ex. 1 ¶ 191.
[61] D.I. 198 at 19.
[62] *See* D.I. 164, Ex. 2 ¶¶ 511-515.

infringement."[63] In any event, Plaintiffs cite no evidence that the panels could fold in such a manner. Leer, on the other hand, cites fact and sworn expert witness testimony to the contrary.[64]

### 6. The HF350 does not infringe the '358 patent.

Leer's HF350 lacks a claimed "forward section" having "a single-component construction between the front edge and the rear edge of the front section that is defined by the unitary extruded panel." The Court previously construed this limitation, also referenced as the "single-component construction" limitation or Limitation [F], to mean, "the front-most section of the covering over the cargo box is an integrated part, as opposed to having a distinguishable central panel supported by frame member(s)."[65] Leer presented undisputed proof that the HF350's bulkhead panel assembly (*i.e.*, forward section) has a central panel with two frame members supporting it.[66] Thus, the HF350' forward section is a **non**-integrated part with "a distinguishable central panel supported by frame member(s)," and does not infringe.

Plaintiffs argue that Leer: (1) has redefined the HF350's end caps as "frame members"[67] and "renewed a claim construction argument that it already lost;" and (2) improperly bases its non-infringement position on "how the product interacts with an unclaimed feature (the cargo box)" and by adding "another" support limitation to the claim.[68] Both arguments fail.

First, Leer is not renewing a failed claim construction argument. During claim construction, Leer argued the "single-component construction" limitation meant a "unitary or single extruded

---

[63] *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 995 (Fed. Cir. 2009) (citation omitted).
[64] D.I. 165, Leer SUF ¶ 17, which is uncontested.
[65] D.I. 90 at 2. The Court explained, "what distinguishes the single-component construction from the multi-component construction is the lack of support frame members of the multi-component construction." *Id*. at 15.
[66] D.I. 162, Ex. 2 ¶¶ 53, 123.
[67] D.I. 198 at 19-20.
[68] D.I. 198 at 24-25.

panel only, with no other components between the front and rear edge, in contrast to the 'multi-component construction' of the rear sections."[69] There was no comparison with the HF350 during claim construction, nor could there be, as the Court construed the claims without reference to the accused device.[70] To be clear, Leer asks the Court to enter summary judgment of non-infringement based on a comparison of the HF350 with the claims *as construed by the Court*. Nor is Leer "redefining" its end caps. Rather, its expert looks to the physical attributes, purpose, and function of these structures and their interrelationship with the central panel and applies the Court's actual claim construction.[71] The end caps support the central panel; they are necessary. Without them, there is no forward section.

Plaintiffs present no evidence even remotely disputing this fact. Plaintiffs also admit that the single component limitation is missing when arguing about how much weight the extruded panel bears compared with the end caps: "There should be no dispute that the front panel bears a minimum of some support as the end caps do not exist in a vacuum and function as a component attached to the extruded panel."[72] This admission that the HF350 "end caps" are support-bearing members attached to the extruded panel confirms that Leer's bulkhead panel assembly is a non-integrated, and therefore non-infringing, forward section.

With the facts against them, Plaintiffs argue that Leer's defense fails "legally" because it "is not based on the product itself, but instead on how the product interacts with an unclaimed

---

[69] D.I. 90 at 14.
[70] *See Smithkline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1314 (Fed. Cir. 2004) ("court must construe claims without considering the implications of covering a particular product or process").
[71] Abraham Lincoln allegedly once said, "Calling a horse's tail a leg does not prove that the horse has five legs." Whether attributable to Honest Abe or not, the point is valid. The fact that Leer labeled a part an end cap does not prove (or even tend to prove) it is not a supporting frame member.
[72] D.I. 198 at 25.

feature (the cargo box)."[73] This argument ignores Leer's actual defense, the claims as construed, and the cases Plaintiffs rely on—*Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522 (E.D. Tex. 1994) and *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361 (E.D. Tex. 2009).

*Cyrix* and *Mass Engineered* both stand for the unremarkable proposition that to infringe an apparatus claim the accused device must have the claimed structure, which must be capable of functioning as claimed. *Mass Engineered*, 633 F. Supp. 2d at 368 (citing *Cyrix*, 846 F. Supp. at 536). Both cases also rely on *Lemelson v. United States*, 752 F.2d 1538 (Fed. Cir. 1985), for the corollary proposition that infringement of an apparatus claim occurs "when the claimed combination has been assembled and is used or is available for use." Notably, in *Lemelson,* the Federal Circuit affirmed a non-infringement finding because "Lemelson failed to meet his burden, to prove that the accused devices embodied the claimed invention." 752 F.2d at 1548-49.

Here, as explained above, the HF350 simply does not embody the claimed invention and therefore is not capable of infringement. Plaintiffs argue the extruded panel portion of the HF350 bulkhead assembly meets the single-component and supporting the stack limitations of the claims, yet admit that to support the stack the panel needs the attached end caps to "function as a component." When confronted with the undisputed fact that the extruded panel is suspended over the cargo box by the attached frame member/end caps, Plaintiffs cry foul, citing Leer's mention of an "unclaimed" cargo box. This is a sideshow. The Court's construction requires that "the front-most section of the *covering over the cargo box* is an integrated part, as opposed to having a distinguishable central panel supported by frame member(s)."

Similarly, the suggestion that Leer is reading a "support" limitation into the claim falls flat in the face of the actual claim language and claim construction. Limitation [D] requires the forward

---

[73] D.I. 198 at 24-25.

section "support" the stack of foldable panels, and Leer's extruded panel (absent the frame members/end caps) does not do this. Leer did not disclaim this non-infringement argument when it substituted in an expert due to an unfortunate illness, as Plaintiffs suggest. Dr. Rakow expressly adopted ¶¶ 93-95 of Dr. Rice's report that "the folded stack of rear panels is not supported by the bulkhead panel, but by the end caps which rest on the cargo box sidewalls."[74] As to the single-component limitation—Limitation [F]—the Court's claim construction expressly excludes a forward section "having a distinguishable central panel *supported* by frame member(s)."[75] As Leer proves, and Plaintiffs failed to dispute, the HF350 has "a distinguishable central panel supported by frame member(s)" and therefore cannot infringe the '358 Patent, regardless of whether it rests on a cargo box or side rail, is folded or not, or is used or available for use.[76]

The Court should, therefore, grant summary judgment of non-infringement of the '358 patent.

### D.   Plaintiffs DOE Theory is Legally Deficient.

Plaintiffs make a factual argument that a spacer and a hinge should be considered the same because "clearly the panels are not in contact."[77] First, Plaintiffs failed to dispute Leer's SUF on this point[78] and therefore waived this argument, and they have nothing to refute Leer's evidence that this is not true.[79] Second, Plaintiffs fail to address the case law that their one-sentence DOE theory is legally deficient for failure to provide particularized testimony and linking argument and because merely asserting the same argument for literal infringement and DOE (as Plaintiffs do) is

---

[74] D.I. 200 Ex. 10; D.I. 162 Ex. 2 ¶¶ 93-95, Rakow declaration/report.
[75] D.I. 90 at 2 (emphasis added).
[76] *See* D.I. 165, Leer's SUF, ¶ 13.
[77] D.I. 198 at 26.
[78] D.I. 165 ¶¶ 2, 4, 16-17.
[79] *See* D.I. 164, Ex. 2 ¶¶ 511-515.

insufficient as a matter of law.[80] Plaintiffs also do not address Leer's vitiation argument (*i.e.*, that Plaintiffs theory eliminates any different between separately claimed spacers and hinge strips).[81]

Plaintiffs' only legal argument is that Leer is supposedly wrong that prosecution history estoppel bars Plaintiffs' DOE theory, because the term "spacer" in the '021 patent is broader than the "spacer bar" term in the '264 patent.[82] Plaintiffs again miss the point. The applicant successfully argued that hinge strips are not spacers.[83] Whether the spacers are bars or something else, they cannot be hinge strips. This is reinforced by the fact that hinge strips are separately claimed structures. The Court should grant summary judgment of no infringement under the DOE.

### E.    No Reasonable Jury Could Find Willful Infringement

Plaintiffs' evidence of knowledge of the patents is insufficient to establish willful infringement.[84] Plaintiffs *argue* that Leer had "the need for a hard folding low profile cover."[85] But Plaintiffs *admit* that Leer had been selling the X2T, a hard-folding, low-profile cover, since 2016.[86] Plaintiffs also argue that Leer's benchmarking shows intent to infringe.[87] But as Judge

---

[80] *See* D.I. 160 at 24-26.

[81] *See* D.I. 160 at 26.

[82] *See* D.I. 198 at 26-27.

[83] *See* D.I. 160 at 26-27

[84] *Boston Scientific Corp. v. Nevro Corp.*, C.A. No. 16-1163-CFC, 2021 WL 4262668, at *3 (D. Del. Sept. 20, 2021) (granting summary judgment of no willful infringement where the patentee cited no evidence that the accused infringer knew that its system infringed the asserted patents); *Sprint Communs. Co. L.P. v. Cequel Communs.*, No. 18-1752-RGA, 2022 U.S. Dist. LEXIS 6775 (D. Del. Jan. 13, 2022) (same).

[85] D.I. 98 at 28.

[86] *See* D.I. 180 at 2, SUF ¶ 11.

[87] Plaintiffs state that their products "encompass the subject matter of the Asserted Patents." D.I. 98 at 28. They cite nothing to support this proposition. Their failure to mark their products with the patent numbers calls this claim into doubt. D.I. 86 at 3 (admitting Plaintiffs have "no responsive documents" to Leer's document request No. 48 concerning "marking of any Patented Product under 35 U.S.C. § 287"); D.I. 85, Ex. K at No. 48.

Andrews found in *Bioverativ, Inc. v. CSL Behring LLC*, "[t]he cited documents do not show copying . . . This is not 'copying.' It is competitive intelligence gathering."[88]

As to post-suit conduct, Plaintiffs again provide only attorney argument—not evidence—that Leer's alleged infringement is anything other than "garden variety." Yet Plaintiffs themselves acknowledged the "garden variety" nature of Leer's alleged infringement by failing to a move for a preliminary injunction.[89] This record establishes that Plaintiffs cannot meet their burden of proof, and the Court should grant Leer's motion for summary judgment of no willful infringement.

### F.    The Asserted Claims of the '264 and '021 Patents are Invalid as Anticipated or Rendered Obvious by the '402 and '893 Wheatley Patents.

#### 1.    The '893 patent is incorporated by reference into the '402 patent.

There is no dispute that the '402 patent incorporates the '893 patent by reference. The dispute is over the extent of the incorporation such that the patents may be considered a single reference for anticipation purposes. This is resolved by the fact that the "details concerning the construction of [a] hard panel tonneau cover" (the subject matter Plaintiffs admit is incorporated into the '402 patent) permeate the entirety of the '893 patent, including FIGS. 6 through 8. This issue is suitable for summary judgment as incorporation by reference is an issue of law.[90]

Additionally, a person of ordinary skill would be motivated to combine the two patents for obviousness purposes because the '402 patent indisputably incorporates the '893 patent.

#### 2.    The '402/'893 patents disclose every limitation of claims 1 and 25 of the '264 patent.

---

[88] C.A. No. 17-914-RGA, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020) (granting summary judgment because plaintiffs had no evidence that defendants acted willfully).

[89] *See, e.g., In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("A patentee who does not attempt to stop an accused infringer's activities in this manner [preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.").

[90] *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009).

Plaintiffs' admit that the '402 patent and '893 patent ("'402/'893 patent") (either alone or in combination) disclose every limitation of claims 1 and 25 of the '264 patent except: (1) "a slam latch assembly on a bottom surface of each of the panels" (claim 1) / "a latch and release assembly on a bottom surface of each of the first, second, and third panels" (claim 25); and (2) "resilient hinge strip(s)" (claim 1) / "resilient connector(s)" (claim 25). And on each of these limitations, Plaintiffs are flat wrong.

First, as shown in the '402 patent's FIG. 13, a slam latch assembly (146) is shown on a bottom surface of the panel (132), which the specification describes as "a plurality of panels 132."[91] Second, interpreting a patent's disclosure is a legal issue, not a factual one, as Plaintiffs wrongly argue.[92] Plaintiffs argument that the '402 patent "never shows that there is a locking mechanism under each of the panels" is incorrect.[93] The '402 patent's "latch assembly" (146) is on the bottom surface of "frame member" (134) of the "plurality of panels" (132).[94]As such, the relevant limitation of claim 1 is expressly met by the '402/'893 patent.

For claim 25, Plaintiffs argue that the release mechanism in the '402 patent is not on the panels' bottom surface.[95] Because Plaintiffs assert that the alleged latch mechanism of the HF350 (which is within the panel) is "on the bottom surface" for infringement, the same interpretation must apply for invalidity, such that the "release mechanism" of the '402 patent (which is within the panel)[96] is also on the "bottom surface."[97] If not, the HF350 does not infringe.

---

[91] *See* D.I. 160 at 35; D.I. 161 Ex. CC, 5:4-7, 20-21.
[92] D.I. 198 at 32. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996).
[93] D.I. 198 at 32.
[94] D.I. 160 at 35.
[95] D.I. 198 at 32-33.
[96] *See, e.g.,* D.I. 181, Ex. 1 ¶¶ 620-621; D.I. 160 at 35.
[97] *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).

Third, Leer never argued that "a bottom surface" was the "top surface of the panel," as Plaintiffs contend."[98] The point is that Plaintiffs view of "bottom surface" for infringement purposes applies for invalidity purposes. Fourth, contrary to Plaintiffs' assertions, *B/E Aerospace* is applicable where, as here, an obviousness combination can be found where the purportedly missing limitation only requires "the predictable application of known technology." If the Court finds the '402 patent does not disclose a slam latch assembly on the bottom surface of each panel, this would have been obvious as a "predictable application of known technology."[99] Fifth, Plaintiffs' argument that the '402/'893 patents are not combinable is contradicted by the '402 patent directing the reader to the '893 patent.[100] Sixth, Plaintiffs' arguments regarding "resilient hinge strips"/"resilient connector(s)" are wrong. "Seal 240" meets the Court's construction of a strip/connector at the joint "made of material that is capable of recovering original shape after deformation," and it allows the panels to pivot.[101]

For the reasons set forth above, there is no material factual dispute that the '402/'893 patent anticipates claims 1 and 25 of the '264 patent, or render claims 1 and 25 obvious if considered as individual references. Summary judgment of invalidity is thus warranted.

### 3. The '402/ '893 patents disclose every limitation of claim 31 of the '021 patent.

Plaintiffs' admit that the '402/'893 patents (either alone or in combination) disclose every limitation of claim 31 of the '021 patent except "a slam latch assembly" and "an extension plate." As previously discussed, the '402/'893 patents disclose the "slam latch assembly" limitation. The '402/'893 patent also disclose the "extension plate" limitation. Plaintiffs' argue that element 190

---

[98] D.I. 198 at 32. *See* D.I. 160 at 35 for Leer's argument.
[99] *B/E Aerospace, Inc. v. C&D Zodiac, Inc.*, 962 F.3d 1373, 1379-80 (Fed. Cir. 2020).
[100] D.I. 161, Ex. CC, 5:4-19.
[101] *See* D.I. 160 at 37-38.

is not an "extension plate" because it is not "secured" to "the fourth panel." (D.I. 198 at 34.)
However, even Plaintiffs' own expert (Dr. Davis) was unable to defend that position, and admitted
that he would                              opinion.[102] There is no material factual dispute that
that item 190 is secured to the fourth panel of that cover.[103] Thus, there is no material factual
dispute that the '402/'893 patent anticipates claim 31 of the '021 Patent.

### 4.  "Spacers" and "stake pocket openings" are disclosed in the prior art.

Plaintiffs did not contest that the '402/'893 patents discloses the "spacer" limitations of
claim 31 of the '021 patent, or the "stake pocket openings" limitation of claim 25 of the '264
patent.[104] Instead, Plaintiffs argue that the additional prior art references identified by Leer (that
disclose the "spacer" limitation (the '428 patent) and "stake pocket openings" limitation (the '636
patent)) are not combinable with the '402/'893 patents.[105] First, the references are not needed to
the extent the Court finds that the '402/ '893 patents anticipate or render obvious claim 31 of the
'021 patent and claim 25 of the '264 patent. Second, should these secondary reference be needed,
a person of skill in the art would have been motivated to combine the references with the '402/'893
patent as discussed in detail by Dr. Rakow and in Leer's opposition brief.[106]

### 5.  There is no material factual dispute that the dependent claims of the '264 patent and the '021 patent are invalid.

Plaintiffs admit "[t]he added limitations of dependent claims 5-11 and 13-15 of U.S. Patent
No. 7,537,264 are found in the prior art, and that the added limitations of dependent claims 32 and

---

[102] Murphy Decl. Ex.XXX (Davis Dep. Tr.) 203:1-206:11.
[103] *See. e.g.,* D.I. 161 Ex. BB FIG. 1 (items 24, 26, 28, 30); *id.* 6:13-48 (front frame member 52 of the front panel 24 of the cover 10 is attached to the extension plate (angle bracket 190) with a bolt 180, which is attached to the side rail 192 "with a pair of bolts 202"); D.I. 160 at 34.
[104] D.I. 160 at 38-40; D.I. 198 at 36-38.
[105] D.I. 198 at 36-38.
[106] D.I. 199 at 17-22; *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 417 (2007).

34 of U.S. Patent No. 8,182,021 are also found in the prior art," as evidenced by the fact that Plaintiffs did not oppose this statement in Defendant's SUF, and their unsworn expert opinion offers nothing to the contrary.[107] Consistent with that admission, Plaintiffs' brief does not identify a single limitation of any dependent claim of either the '264 patent or the '021 patent as not found in the prior art in their opposition brief.[108] Plaintiffs only make a generic argument regarding motivation to combine, without identifying any combination purportedly lacking such motivation. Leer handily defeats this argument in its opposition brief.[109] The Court should grant summary judgment that all asserted claims of the '264 and '021 patents are invalid.

### G.   Dr. Davis is not qualified to opine on availability and acceptability or secondary considerations of non-obviousness.

Citing no case law and without addressing any of Leer's cases, Plaintiffs argue their technical expert is qualified to opine on the absence of NIAs. But, rather than showing Dr. Davis has the requisite "scientific, technical, or other specialized knowledge [that] will help the trier of fact,"[110] Plaintiffs simply state that by commenting on documents produced during discovery and the testimony of lay witnesses, Dr. Davis can render opinions on availability and acceptability. That is not the law.[111] Plaintiffs also never address that Dr. Davis is not qualified to opine on a nexus between Plaintiffs' products and the '264, '021, and '358 patents, or Leer's case law on this point. A technical background does not qualify an expert "to testify about the nexus between the patented features and the products' commercial success," and this "cannot be corrected merely by cross-examination" absent "the requisite knowledge and experience to opine on this nexus

---

[107] *See* D.I. 165 ¶ 23; D.I. 161, Ex. L at ¶¶ 242-289, 400-410.
[108] *See* D.I. 198 at 38-39.
[109] *See* D.I. 199 at 17-22.
[110] *See* FED. R. EVID. 702.
[111] *See Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) (Bryson, J.) (striking secondary indicia opinion where expert's "education and work experience[] are not pertinent to his conclusions").

22

issue."[112] Indeed, "[t]here is no basis to conclude that [Dr. Davis'] expertise or experience would provide any help to the jury or the court in addressing th[is] issue," and "the methodology employed by [Dr. Davis] does not meet Rule 702 standards." *Id*. Plaintiffs have no rebuttal to this.

Plaintiffs have not identified any evidence of Leer copying a specific product. Thus, as a matter of law, there is no evidence of copying.[113] Furthermore, because Plaintiffs admit that none of Dr. Davis' opinions concerning "copying" are based on his expertise,[114] the Court should strike these opinions.[115] As Dr. Davis offers no opinion on lack of independent invention beyond his commercial acceptability and copying opinions, this opinion should be excluded for the same reasons. Finally, Plaintiffs' accusation that Leer "could not be bothered to" review the invention disclosure statement that Dr. Davis cites is not only false, but fails to address that Dr. Davis' cut and paste of the invention disclosure statement does not qualify as expert opinion.[116] With no meaningful opposition, and clear evidence that Dr. Davis in unqualified, the Court should grant Leer's *Daubert* motion.

## III.     CONCLUSION

For the reasons set forth above, Leer respectfully requests that the Court grant Leer's motions.

Dated:  January 18, 2022                              BARNES & THORNBURG LLP

**Redacted Version filed on January 25, 2022**

/s/ *Regina S.E. Murphy*
Chad S.C. Stover (No. 4919)
Regina S.E. Murphy (No. 5648)
1000 North West Street, Suite 1500
Wilmington, DE  19801

---

[112] *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1242 (D. Utah 2013).
[113] *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) ("Our case law holds that copying requires evidence of efforts to replicate a specific product.")
[114] D.I. 198 at 43.
[115] *See Sonos*, 297 F. Supp. 3d at 521.
[116] *See* D.I. 160 at 50.

Tel: (302) 300-3434
Fax: (302) 300-3456
Email:  chad.stover@btlaw.com
Email:  gigi.murphy@btlaw.com

D. Randall Brown (admitted *pro hac vice*)
888 S. Harrison Street, Suite 600
Fort Wayne, IN 46802
Tel:  (260) 425-4674
Fax: (260) 424-8316
Email:  randy.brown@btlaw.com

*Attorneys for Defendant*