IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EXTANG CORPORATION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 19-923 (KAJ) |
| ) | **FILED UNDER SEAL** |
| TRUCK ACCESSORIES GROUP, LLC, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Geoffrey G. Grivner, Nadia S. Loizides, Buchanan Ingersoll & Rooney PC, 500 Delaware Avenue, Suite 720, Wilmington, DE 19801, *Counsel for Plaintiffs*
    Of Counsel: Steven A. Caloiaro, Dickinson Wright PLLC, 100 W. Liberty St., Ste. 940, Reno, NV 89523
        H. Jonathan Redway, Dickinson Wright PPLC, 1825 Eye Street, N.W., Ste. 900, Washington, DC 20006

Chad S.C. Stover, Regina S.E. Murphy, Barnes & Thornburg LLP, 1000 North West Street, Suite 1500 Wilmington, DE 19801, *Counsel for Defendant*
    Of Counsel: D. Randall Brown, 888 S. Harrison Street, Ste. 600, Fort Wayne, IN 46802

February 18, 2022
Wilmington, Delaware

1

JORDAN, Circuit Judge, sitting by designation.

## I. INTRODUCTION

This is a lawsuit by Extang Corporation, UnderCover, Inc., and Laurmark Enterprises, Inc. d/b/a BAK Industries (collectively and in the singular, "Extang") against Truck Accessories Group, LLC d/b/a Leer, Inc. ("Leer"). Extang and Leer are competitors who sell accessories for pickup trucks. Extang alleges that Leer is infringing four of its patents that relate to foldable tonneau covers for pickup truck cargo boxes. (D.I. 1 at 1-2.) Those four patents are U.S. Patent Nos. 8,182,021 (the '021 patent); 7,537,264 (the '264 patent); 9,815,358 (the '358 patent); and 6,893,073 (the '073 patent). The accused product is the model HF350 tonneau cover, which is designed, marketed, and sold by Leer. (D.I. 169 at 1.)

Both sides have moved for partial summary judgment on an assortment of issues. At issue in this decision are the parties' cross-motions regarding infringement: Extang moved for summary judgment that the HF350 infringes certain asserted claims from the '264 patent, and Leer moved for summary judgment that the HF350 does not infringe the '264 patent or the '021 patent. (D.I. 159; D.I. 168.) Extang's motion will be denied, and Leer's motion will be granted in part and denied in part.[1]

---

[1] During briefing on the motion for summary judgment, Extang forgot to file objections to Leer's Statement of Undisputed Facts, as required by the Court's Scheduling Order. (D.I. 216 at 2; D.I. 146.) Two weeks later, it sought leave to file untimely objections. (D.I. 216.) Although Extang's default is not helpful, I am not convinced that Leer will suffer any significant prejudice if I allow the late filing. I will therefore grant the motion, and I have considered Extang's objections in this opinion.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021); Fed. R. Civ. P. 56(a). A "material fact" is one which could affect the outcome of the case, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).

### B. Literal Infringement

"To prove literal infringement, the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021). To prevail on a motion for summary judgment of infringement, "a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement ... with all reasonable inferences drawn in favor of the non-movant." *Id.* On the other hand, summary judgment of non-infringement is available "when no reasonable factfinder could find that the accused product contains every claim limitation[.]" *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016).

Although Extang accuses Leer of infringing each of the four asserted patents, only two are the subject of this decision: the '264 patent and the '021 patent.[2]

### 1.     The '264 Patent

The asserted claims of the '264 patent are directed to hard, folding tonneau covers that offer improved access to the truck's cargo box while also securely closing and latching to a support frame, such as one with side rails. (D.I. 181, Ex. 2 at ¶¶ 56, 115.)

Extang asserts that the HF350 infringes independent claims 1 and 25 from the '264 patent, along with claims 5-11 and 13-15 (which all depend from claim 1). (D.I. 160 at 11.) It currently seeks partial summary judgment of infringement as to claims 1, 5, and 6. (D.I. 169 at 1.) Leer cross-moved for summary judgement of *non*-infringement as to all asserted claims in the '264 patent. (D.I. 160 at 11.)

It is undisputed that the HF350 tonneau cover contains most of the limitations in the asserted claims from '264 patent.[3] The remaining disputes involve whether it

---

[2] Leer moved for summary judgment of non-infringement the '358 patent, arguing that the undisputed evidence could not support a finding that the HF350 had a "forward section being formed of an unitary extruded panel" that "has a single-component construction," as required by each claim. (D.I. 160 at 22.) I previously denied Leer's motion in that respect, concluding that there is a genuine dispute as to whether the HF350's end caps constitute part of the claimed "forward section." (D.I. 226 at 2.) There are no more claims of the '358 patent or the '073 patent still at issue in the parties' cross-motions for summary judgment on infringement.

[3] In its responding supplemental letter, Leer argues that Extang "failed to come forward with evidence that the accused HF350 cover meets the remaining elements of claims 1, 5 and 6." (D.I. 231 at 2.) But Extang's expert report indeed presents such evidence. (D.I. 181, Ex. 2 at ¶¶ 118-63.) By contrast, Leer's expert only disputed the two elements from claim 1: the "second resilient hinge strip" and the "slam latch assembly on a bottom surface." (D.I. 181, Ex. 4 at ¶¶ 245, 247-97.) Nowhere in Leer's

4

possesses "a second resilient hinge strip connecting the second panel to the third panel" and "a slam latch assembly on a bottom surface of each of the panels."[4]

### i.     The second resilient hinge strip

Claim 1 requires "a second resilient hinge strip connecting the second panel to the third panel and allowing the second panel to pivot relative to the third panel." (D.I. 161, Ex. C at 8:16-18.) The Court previously defined a "resilient hinge strip" to mean a "strip at the joint made of material that is capable of recovering original shape after deformation." (D.I. 90 at 2.)[5] Similarly, claim 25 requires "a second resilient connector pivotally connecting the second panel to the third panel." (D.I. 161, Ex. C at 12:3-4.) The Court also construed a "resilient connector" as a "connector made of material that is capable of recovering original shape after deformation." (D.I. 90 at 2.)[6] As relevant to both claims, I recently construed "connecting the second panel to the third panel" to mean "directly or indirectly connecting the second panel to the third panel." (D.I. 226 at 2.)

---

briefing does it dispute any other claim limitation not addressed in this decision or my previous ruling.

[4] Leer also moved for summary judgment of non-infringement based on the limitation from claim 25 that requires a "cab panel fixed in place within the cargo box." (D.I. 160 at 17.) In a previous order, I denied Leer's motion in that respect, having concluded that there is enough evidence to support an argument that the HF350's front panel is within the cargo box. (D.I. 226 at 2.)

[5] The claim construction rulings reflecting in D.I. 90 were made prior to my being assigned the case. They continue to govern.

[6] The parties' briefing does not identify any material difference between the "resilient hinge strip" from claim 1 and the "resilient connector" from claim 25.

The parties agree that the second panel and third panel in the HF350 are connected in the following sequence of components: second panel – second hinge – spacer – third hinge – third panel. The following diagram of the HF350 details that arrangement:



(D.I. 162, Ex. 2 at ¶ 35.) The parties also agree that that the second hinge is a "resilient hinge strip" or "resilient connector," as used in the claims. What the parties disagree on is whether the HF350's second hinge, as placed in that configuration, (1) connects the

second panel to the third panel and (2) allows the second panel to pivot relative to the third panel.

There is evidence supporting Extang's argument that the HF350's second resilient hinge strip connects its second and third panels. That argument was boosted by my order construing "connecting" to include both direct and indirect connections. (D.I. 226 at 2.) *Cf. Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) ("The ordinary meaning of 'connected to' encompasses indirect linkages."). The fact that there is additionally a spacer bar and a third hinge between the second hinge and the third panel may be an obstacle to finding a direct connection, but not to finding an *indirect* connection. A reasonable jury could find that the second hinge indirectly connects the second panel and the third panel.

Leer is correct, however, that the claim language does not merely require the second hinge strip to connect the second panel and third panel; rather, it also requires the second hinge strip to "allow[] the second panel to pivot relative to the third panel." (D.I. 181, Ex. C at 8:16-18; *see also id.* at 12:3-4 ("a second resilient connector pivotally connecting the second panel to the third panel"). Leer argues that "the second hinge [of the HF350] allows the second panel to pivot relative to a spacer," rather than to the third panel. (D.I. 199 at 11.) That is not a frivolous argument. The claim's requirement that the second panel "pivot relative to" the third panel requires something more than – i.e., in addition to – an indirect connection between the two panels. A reasonable jury could find that the way in which the second hinge indirectly connects the second and third panels

7

does not also satisfy the requirement that it allow the second and third panels to pivot relative to each other.

Because there is evidence that supports both parties' arguments with respect to "a second resilient hinge strip connecting the second panel and third panel," both parties' motions for summary judgment will be denied with respect to that claim limitation.

### ii. The latch assembly on the bottom surface of the panels

Claim 1 of the '264 Patent requires "a slam latch assembly on a bottom surface of each of the panels." (D.I. 161, Ex. C at 8:19-20.) Similarly, Claim 25 of the '264 Patent requires "a latch and release assembly on a bottom surface of each of the first, second and third panels." (D.I. 161, Ex. C at 11:21-22.) The use of the indefinite article "a" in each of those limitations indicates that "there may be more than one bottom surface" of a panel. (D.I. 226 at 2.) The term "bottom" is given its plain and ordinary meaning. (D.I. 226 at 2.)

Starting with Extang's motion for summary judgment on this issue, that motion will be denied because a reasonable jury could find that the latch assembly is not on a bottom surface of the panel. Claim 1 of the '264 patent describes its "slam latch assembly" as including "springs" and "plungers." (D.I. 161, Ex. D at 8:20-22.) It is undisputed that the spring of the HF350's latch assembly is located entirely within a channel in the panel's frame. (D.I. 169 at 12.) Leer focuses on the spring's channel being inside the panel rather than below the panel, as shown below (with the panel cross-sectioned and flipped upside down):

8



(D.I. 162, Ex. 2 at ¶ 281.) Extang takes a more nuanced view and focuses on the spring's channel, which is carved out from the bottom of the panel, as shown below (again with the panel flipped upside down):



(D.I. 169 at 12; D.I. 181, Ex. 23.) As shown in the diagram, Extang argues that the top of the channel still counts as a bottom surface of the panel. A reasonable jury, however, could reject that argument, particularly if the plain and ordinary meaning of "bottom" is understood to be "the lowest part of something." (*See* D.I. 229, Ex. A (the first definition of "bottom" in the Cambridge English Dictionary).) Thus, although each panel may have more than one bottom surface, there are still genuine disputes as to whether the top of the

9

channel is a bottom surface of the panel and thus whether the HF350's slam latch assembly is located on a bottom surface of the panel.

But a reasonable jury could also find that the latch assembly is indeed on a bottom surface of the panel, so Leer's motion for summary judgment on this issue will also be denied. As described above, it is not a frivolous argument to say that the top of the channel is a bottom surface of the panel. It is relevant that the slam latch assembly is only visible and accessible from the bottom of the panel, regardless of whether it is also inside a channel. That configuration becomes particularly pertinent if the plain and ordinary meaning of "bottom" is understood to be "the underside of something." (*See* D.I. 229, Ex. A (the first definition of "bottom" in the Merriam-Webster dictionary).) Those points further reinforce that there is a genuine dispute as to whether the HF350's slam latch assembly is located on a bottom surface of the panel.[7]

### 2.     The '021 Patent

The asserted claims of the '021 patent are generally directed to foldable tonneau covers that use a latch system to hold the cover in place. (D.I. 181, Ex. 2 at ¶ 242.) Extang asserts that the HF350 infringes independent claim 31 of the '021 patent, as well as dependent claims 32 and 34. (D.I. 160 at 11.) Although Extang does not seek summary judgment with respect to the '021 patent, Leer has moved for summary judgment of non-infringement as to each asserted claim. (D.I. 160 at 11.) Specifically,

---

[7] Furthermore, questions remain regarding whether the slam latch assembly's plunger and the release mechanism are on a bottom surface of the panel and whether variations in the claim language make that legally significant. (*See* D.I. 161, Ex. C at 11:21 (requiring "a latch *and release* assembly on a bottom surface" (emphasis added)).)

Leer argues that the HF350 lacks two limitations from claim 31 of the '021 patent: a "panel support surface," and a "second spacer pivotally attached to the third panel and to a fourth panel." (D.I. 161, Ex. D at 12:14-23.)[8]

### i. The panel support surface.

Claim 31 requires a "side rail comprising ... a panel support surface." (D.I. 161, Ex. D at 12:13-14.) The accused component of the HF350 that purportedly satisfies that element is its "lip plate," as it is characterized by both parties. The following image shows the HF350's rails, as labelled by Extang's expert:



---

[8] Leer also argues that the HF350 lacks "a latch assembly entirely on a bottom surface of one or more of the first, second and third panels," as required by the '021 patent. (D.I., Ex. D at 12:25-26.) As discussed above, there is a genuine dispute as to whether the HF350's latch assembly is on a bottom surface of the panels. The parties did not argue that there was any material difference between the wording among the claims that contain that limitation. Therefore, Leer's motion for summary judgment as to the '021 patent will also be denied in that respect.

11

(D.I. 181, Ex. 2 at ¶ 251.) The following image shows how the HF350's lip plate engages with the cover and the cargo box sidewalls:



(D.I. 162, Ex. 2 at ¶ 480.)

As an initial matter, Leer argues that Extang disavowed during the prosecution history any construction of the phrase "side rail comprising ... a panel support surface" that could encompass the HF350's side rail and its lip plate. (D.I. 160 at 16-17.) "The doctrine of prosecution disclaimer precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1141 (Fed. Cir. 2021) (alterations omitted).

12

"[A]n applicant's argument [during prosecution] that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Id.* "[T]he standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). For example, the district court in *Traxcell* properly construed the term "location" to mean "location that is not merely a position in a grid pattern" only after the applicant told the examiner that its invention "operated without the limitation of a grid pattern," in order to distinguish the invention from prior art systems that "used locations in roughly a grid pattern." *Traxcell*, 15 F.4th at 1141 (internal quotations marks omitted); *see also Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1383 (Fed. Cir. 2021) (applying prosecution disclaimer after the applicant "provid[ed] an express definition" of the claim term in order to distinguish the prior art).

Leer argues that, during prosecution of the '021 patent, Extang "disclaimed tonneau covers that are supported on top of cargo box sidewalls." (D.I. 160 at 16.) In support of its argument, it points to two statements that Extang made during prosecution. First, Extang distinguished two prior art references by saying that those prior art tonneau covers "sit[] on top of the [cargo] box, not on side rails." (D.I. 161, Ex. T at '1116-17.) Second, Extang distinguished another prior art reference by observing that the reference's "rail section" cited by the examiner "does not support any panel," because the panel is "supported on the seal[] resting on the lip or projection" closer to the cargo box sidewall instead of on the cited "rail section." (D.I. 161, Ex. T at '1120.) Neither of those

13

arguments amount to clear and unmistakable statements by Extang that its claimed invention cannot include tonneau covers supported on top of the cargo box sidewalls. In fact, in those passages, Extang made no mention of its own invention's features. At best, Leer seeks to draw an inference about what the claimed invention does not include, based on what the distinguished prior art does include. That is not enough to invoke prosecution disclaimer. Thus, the phrase "panel support surface" will have its plain and ordinary meaning, without importing any limitation from the prosecution history.

The claim's use of the phrase "panel support surface" is broad. It does not mention any other limitation or function of the panel support surface. Although the figures and specification of the '021 patent depict a panel support surface set below the level of the cargo box sidewall so that the "cover sits approximately flush with the [sidewall] top surface" when supported (D.I. 161, Ex. D at 6:51-53), that is but one embodiment of the invention. A court must not import limitations from the figures and specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). The claim itself contains no limitations on where the panel support surface must be or how much it must support the panels. When the HF350 cover is fully installed (including with its side rails), the panels sit directly on top of each side rail's lip plate. That is sufficient evidence for a reasonable jury to find that the lip plate could be a panel support surface.

14

### ii.     The second spacer

Claim 31 requires "a second spacer pivotally attached to the third panel and to a fourth panel." (D.I. 161, Ex. D at 12:22-23.) The Court previously construed the term "spacer" from claim 31 to have its plain and ordinary meaning. (D.I. 90 at 13-14.) In doing so, it rejected Leer's argument that "spacer" should be limited to a "spacer bar," or a "bar made of inflexible, inelastic material dimensioned wide enough for the panels to fold flat onto each other." (D.I. 90 at 13-14.)[9] Although the '021 patent identified a configuration utilizing inflexible spacer bars as one embodiment of the claimed invention, the Court declined to read that limitation into the claim. [D.I. 90 at 14.] Based on that construction, the plain and ordinary meaning of the term "spacer" can more broadly refer to an object that creates or maintains space, regardless of that object's dimensions or materials.

---

[9] In agreeing with Extang that the term "spacer" should be given its plain and ordinary meaning, the Court did not adopt Extang's alternatively proposed construction of "an object dimensioned to allow the panels to fold flat onto each other, without stressing the hinge joints." (D.I. 90 at 13-14.)

15

Leer argues that there cannot be a spacer between the third and fourth panel of the HF350 because there is no space. (D.I. 160 at 21.) As shown below, however, the panels do not touch. When viewed from above, a hinge strip is visible between the panels:



(D.I. 181, Ex. 2 at ¶ 262.) When viewed internally, the panels are separated by a hinge and a component described as an ABS Striker:



(D.I. 162, Ex. 2 at ¶ 516.) That evidence supports a finding that there is space between the third and fourth panels.

Because a "spacer" is not limited to being an inflexible spacer bar and because there is evidence to support a finding of space between the panels, a reasonable jury could find that the HF350 has a "second spacer pivotally attached to the third panel and to a fourth panel." Leer's motion for summary judgment will be denied in that respect.

### C.     Doctrine of Equivalents

"A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 943 F.3d 929, 938 (Fed. Cir. 2019). "To survive summary judgment of noninfringement under the doctrine of equivalents, [the patentee must] present evidence of equivalence under each prong of the function-way-result test." *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1336 (Fed. Cir. 2014); *see also AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) ("[The patentee] was required to provide particularized testimony and linking argument on a limitation-by-limitation basis that created a genuine issue of material fact as to equivalents."). "[W]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete

summary judgment." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015).

Extang seeks to apply the doctrine of equivalents in the context of claim 31 from the '021 patent, which requires a "second spacer pivotally attached to the third panel and to a fourth panel." (D.I. 161, Ex. D at 22-23.) As discussed above, Extang contends that the hinge strip between the HF350's third panel and fourth panel (or bulkhead panel) is the "second spacer" from claim 31, as required for literal infringement. It also argues that the HF350's hinge strip could be the "second spacer" under the doctrine of equivalents. Extang's only evidence in support of that argument is one paragraph in its expert's report, repeated here in its entirety: "In addition, the hinge strip identified above employs substantially the same function of providing space. Consequently, even if the HF350 was not found to literally infringe, it would infringe under the doctrine of equivalents." (D.I. 181, Ex.2 at ¶ 265.)

Those two sentences – one factual, one conclusory – do not support Extang's evidentiary burden for surviving a motion for summary judgment. At most, the testimony states that the hinge strip performs the same function to achieve the same result. But there is no testimony that the hinge strip provides space in the same way as the claimed "second spacer." *See Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001) (holding that an inference that an accused product performs a function in the same way just because it achieves the same result is not enough to survive summary judgment). The expert opinion lacks "particularized testimony and linking argument," *AquaTex*, 479 F.3d at 1328, which suggests that Extang's argument is an

18

impermissible attempt to repackage its literal infringement theory as a doctrine-of-equivalents infringement theory." *Osseo Imaging, LLC v. Planmeca USA Inc.*, 2020 WL 6318724, at *5 (D. Del. Oct. 28, 2020).

Because Extang has not presented evidence from which a reasonable jury could find infringement via the doctrine of equivalents, Leer's motion for summary judgment will be granted in that respect.

## IV. CONCLUSION

For the foregoing reasons, I will deny Extang's Motion for Partial Summary Judgment of U.S. Patent No. 7,537,264 (D.I. 168). I will grant Leer's Motion for Summary Judgment (D.I. 159) with respect to Extang's doctrine of equivalents argument, but I will deny Leer's motion in all other respects.