IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EXTANG CORPORATION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 19-923 (KAJ) |
| ) | **FILED UNDER SEAL** |
| TRUCK ACCESSORIES GROUP, LLC, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Geoffrey G. Grivner, Nadia S. Loizides, Buchanan Ingersoll & Rooney PC, 500 Delaware Avenue, Suite 720, Wilmington, DE 19801, *Counsel for Plaintiffs*
    Of Counsel: Steven A. Caloiaro, Dickinson Wright PLLC, 100 W. Liberty St., Ste. 940, Reno, NV 89523
    H. Jonathan Redway, Dickinson Wright PPLC, 1825 Eye Street, N.W., Ste. 900, Washington, DC 20006

Chad S.C. Stover, Regina S.E. Murphy, Barnes & Thornburg LLP, 1000 North West Street, Suite 1500 Wilmington, DE 19801, *Counsel for Defendant*
    Of Counsel: D. Randall Brown, 888 S. Harrison Street, Ste. 600, Fort Wayne, IN 46802

February 18, 2022
Wilmington, Delaware

1



JORDAN, Circuit Judge, sitting by designation.

## I. INTRODUCTION

This is a lawsuit by Extang Corporation, UnderCover, Inc., and Laurmark Enterprises, Inc. d/b/a BAK Industries (collectively and in the singular, "Extang") against Truck Accessories Group, LLC d/b/a Leer, Inc. ("Leer"). Extang and Leer are competitors who sell accessories for pickup trucks. Extang alleges that Leer is infringing four patents that relate to foldable tonneau covers for pickup truck cargo boxes (the "Asserted Patents"). (D.I. 1 at 1-2.) The accused product is the model HF350 tonneau cover, which is designed, marketed, and sold by Leer. (D.I. 169 at 1.)

Both sides have moved for partial summary judgment on an assortment of issues. This decision addresses the parties' cross-motions regarding willfulness: Extang moved for summary judgment that Leer's alleged infringement was willful, and Leer moved for summary judgment that any infringement was *not* willful. (D.I. 159; D.I. 176.) Both motions will be denied.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists "no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021); Fed. R. Civ. P. 56(a). A "material fact" is one which could affect the outcome of the case, and "a dispute about a material fact is

2

'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).

### B. Willfulness Standard

District courts have discretion to award enhanced damages against patent infringers, but they should generally refrain from doing so in "garden-variety" cases of infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 109-10 (2016). Such an award is instead "reserved for egregious cases typified by willful misconduct." *Id.* at 106. Put somewhat more emphatically, enhanced damages are warranted when the alleged conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Id.* at 103-04.

The Federal Circuit has divided the enhanced-damages determination into two stages. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). As a threshold matter, the factfinder must make a finding of willfulness. *Id.* If that is done, the district court then determines the level of enhanced damages by considering whether the accused infringer's conduct was "egregious behavior" or "worthy of punishment." *Id.*; *see also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019) ("[I]t is the *circumstances* that transform simple 'intentional or knowing' infringement into egregious, sanctionable behavior, and that makes all the difference.").

The issue before me now involves the threshold inquiry of whether the alleged infringement was willful. At this stage, the patentee need not show "wanton, malicious, and bad-faith" conduct. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir.

3

2021). "The concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Id.* The accused infringer's knowledge of the asserted patents "is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). In addition to proving the infringer had knowledge of the patents, "the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Id.* at 987. The accused infringer must have known that the asserted patents were being infringed, not just that they existed. *Bos. Sci. Corp. v. Nevro Corp.*, 2021 WL 4262668, at *3 (D. Del. Sept. 20, 2021) ("Knowledge of a patent is not the same thing as knowledge that a product or the use of that product infringes the patent.").

It is undisputed that Leer knew about most of the Asserted Patents by November 2017, prior to the development of the HF350.[1] (D.I. 181, Ex. 21; D.I. 180 at 6; D.I. 203 at 5.) Thus, the main issue presented by the parties' motions is whether there is evidence

---

[1] It is undisputed that Leer did not learn about one of the Asserted Patents – U.S. Patent No. 6,893,073 – until this lawsuit was filed. (D.I. 180 at 6; D.I. 203 at 5.) There is a split of authority on whether a claim for willful infringement requires a defendant to have known about the patent *prior* to the filing of the lawsuit. *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) (collecting cases). In my view, Leer's post-filing conduct could still be found to be willful infringement, particularly if there is no evidence that Leer halted its allegedly infringing activities even after receiving notice of the '073 patent upon being served with the complaint. But that does not mean that Leer's lack of pre-filing knowledge is entirely irrelevant. If a jury ultimately finds that Defendant willfully infringed the Asserted Patents, then the timing of Defendant's knowledge may be a factor in an enhanced-damages determination. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992) (identifying "[d]uration of the defendant's misconduct" as a factor in determining enhanced damages).

creating a genuine dispute about whether Leer knew that the HF350 infringed those patents.

### C.  Extang's Motion for Summary Judgment

Extang suggests three ways in which the evidence allegedly demonstrates that Leer knew that the HF350 infringed the Asserted Patents. First, Extang points to evidence that Leer "was benchmarking or reviewing [Extang's] products." (D.I. 177 at 3.) Although Leer indeed benchmarked – i.e., compared (D.I. 181, Ex. 13 at 174:4-5) – its HF350 against Extang's covers, that does not compel a finding that it had specific intent to copy the patented features. It is not inherently suspect to compare one's product to a competitor's product. Benchmarking is a common practice. Indeed, Leer's design engineer testified that it is "normal" to inspect a competitor's cover, and Extang's representative acknowledged doing the same thing. (D.I. 181, Ex. 13 at 174:13-18; D.I. 200, Ex. LLL at 82:7-21). A jury could reasonably infer that the alleged infringement was not willful, particularly where the accused infringer "acted consistently with the standard of behavior for its industry." *Bioverativ Inc. v. CSL Behring LLC*, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020) (finding that the accused infringer had engaged in "competitive intelligence gathering," not copying, when it closely tracked the clinical test data for the patentee's pharmaceutical product).

Second, Extang says that Leer "copied at least one element" of its products. (D.I. 177 at 3.) But the evidence of "copying" in the record does not compel a finding that any infringement of the Asserted Patents was willful. The only such evidence in the record is Leer's acknowledgement, in a deposition, that it chose to design a tonneau cover that

5

folds up to uncover 95% of the truck bed after having seen other covers with that same structure. (D.I. 181, Ex. 12 at 271:16-275:5.) That particular structure is not a feature claimed by the Asserted Patents, and Leer did not necessarily say that it copied that feature from *Extang's* covers. Additionally, Leer implemented that configuration first in its model X2T tonneau cover, and only later in the HF350. (D.I. 181, Ex. 12 at 271:16-275:5; D.I. 181, Ex. 27 at '754.) In short, the only evidence now in the record of what might be called copying arguably demonstrates only an attenuated relationship between the HF350 and the Asserted Patents.

Third, Extang asserts that Leer "recognized the need for a hard folding low profile cover … and created the [HF350] so that Leer could compete with [Extang]." (D.I. 198 at 28.) But the record belies that assertion. Before developing the HF350, Leer had already introduced the X2T as its hard, folding, low-profile tonneau cover. (D.I. 200, Ex. HHH at 53:21-54:10; D.I. 181, Ex. 26.) There is no evidence that Leer "desperately needed" a tonneau cover to compete with Extang's patented technology. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006) (holding that there was substantial evidence to uphold a finding of willfulness where, among other things, the accused infringer "desperately needed" the product to remain competitive in the industry); *see also C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020) (holding that there was sufficient evidence to support a finding of willfulness where the accused infringer was losing significant market share to the patentee); *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1354 (Fed. Cir. 2018) (holding that there was

sufficient evidence to support a finding of willfulness where, among other things, the defendant previously lacked a product to compete with the patentee).

Despite Extang's characterizations of the record, there is sufficient evidence to support a finding that Defendant did not know that the HF350 infringed the Asserted Patents, let alone that it specifically intended to infringe.[2] Plaintiffs' motion for summary judgment will therefore be denied.

### D.  Defendant's Motion for Summary Judgment

Leer's cross-motion for summary judgment of non-willfulness is a closer call, but there is still enough evidence from which a reasonable juror could infer willfulness. For example, although benchmarking is a common activity among tonneau cover designers, a jury could infer that Leer did more than merely observe product features when it bought some of Extang's tonneau covers "to compare to the next gen X2T." (Caloiaro Decl., Ex. 21.) The timing of the examination – just as Leer was designing the HF350 – could be construed as suspicious and as support for a finding of specific intent. (D.I. 181, Ex. 13 at 174:6-18; D.I. 181, Ex. 21 at '5786.) Given the undisputed fact that Leer knew that Extang's tonneau covers were patented, if the HF350 is ultimately proven to infringe

---

[2] Additionally, Extang argues (without citation) that "the sheer breadth of similarities between the Accused Product and the claims in the Asserted Patents" compels a finding of willfulness. (D.I. 177 at 3.) That argument, however, does not prove that Leer had specific intent to infringe the Asserted Patents.

Extang further faults Leer for not proffering evidence that it relied on advice from counsel that the HF350 did not infringe the Asserted Patents. (D.I. 177 at 3.) In doing so, Extang ignores 35 U.S.C. § 298: "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringing patent, or to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent[.]"

those patents, the evidence – including the alleged many similarities between the parties' products – appears sufficient for a reasonable jury to find that the infringement was willful and egregious. Leer's motion for summary judgment will therefore be denied.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Extang's Motion for Summary Judgment of Willfulness (D.I. 176) and Leer's Motion for Summary Judgment (D.I. 159) with respect to its willfulness arguments.