IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EXTANG CORPORATION, et al., )
)
Plaintiffs, )
)
v. )        Civil Action No. 19-923 (KAJ)
)        **FILED UNDER SEAL**
TRUCK ACCESSORIES GROUP, LLC, )
)
Defendant. )

———————

MEMORANDUM OPINION

———————

Geoffrey G. Grivner, Nadia S. Loizides, Buchanan Ingersoll & Rooney PC, 500
Delaware Avenue, Suite 720, Wilmington, DE 19801, *Counsel for Plaintiffs*
    Of Counsel:  Steven A. Caloiaro, Dickinson Wright PLLC, 100 W. Liberty St.,
        Ste. 940, Reno, NV 89523
        H. Jonathan Redway, Dickinson Wright PPLC, 1825 Eye Street,
        N.W., Ste. 900, Washington, DC  20006

Chad S.C. Stover, Regina S.E. Murphy, Barnes & Thornburg LLP, 1000 North West
Street, Suite 1500 Wilmington, DE 19801, *Counsel for Defendant*
    Of Counsel:  D. Randall Brown, 888 S. Harrison Street, Ste. 600, Fort Wayne, IN
        46802

———————

February 18, 2022
Wilmington, Delaware



JORDAN, Circuit Judge, sitting by designation.

## I.    INTRODUCTION

This is a lawsuit by Extang Corporation, UnderCover, Inc., and Laurmark

Enterprises, Inc. d/b/a BAK Industries (collectively and in the singular, "Extang") against

Truck Accessories Group, LLC d/b/a Leer, Inc. ("Leer"). Extang and Leer are

competitors who sell accessories for pickup trucks. Extang alleges that Leer is infringing

four of its patents that relate to foldable tonneau covers for pickup truck cargo boxes.

(D.I. 1 at 1-2.) The accused product is the model HF350 tonneau cover, which is

designed, marketed, and sold by Leer. (D.I. 169 at 1.)

One of Extang's asserted patents is U.S. Patent No. 9,815,358 (the "'358 patent"),

which has a priority date of June 28, 2016. (D.I. 180 at 2; D.I. 203 at 1.) Leer argues that

the '358 patent is invalid because it was anticipated by Leer's model X2T tonneau cover,

which it had developed and sold prior to releasing the HF350. As discussed below, Leer

asserts that the X2T constitutes prior art because it was in public use by late 2014 and on

sale by the spring of 2016.

Extang disagrees, and it has moved for partial summary judgment that the X2T

does not constitute prior art. (D.I. 174.) For the following reasons, that motion will be

denied.

## III.    DISCUSSION

Summary judgment is appropriate only if, after drawing all reasonable inferences

in favor of the non-moving party, there exists "no genuine dispute as to any material fact"

and the movant "is entitled to judgment as a matter of law." *Moyer v. Patenaude &*

*Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021); Fed. R. Civ. P. 56(a). A "material fact"

is one which could affect the outcome of the case, and "a dispute about a material fact is

'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for

the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).

Because patents are presumed valid, 35 U.S.C. § 282, the party challenging

validity must prove that the claims are invalid by clear and convincing evidence.

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). A patent may be invalidated

under 35 U.S.C. § 102(a) if the claimed invention was "in public use, on sale, or

otherwise available to the public" before the patent application's effective filing date.

Extang argues that the X2T cannot be prior art because there is no evidence that the X2T

was ever publicly used or on sale. (D.I. 175 at 3-6.) It also argues that, even if the X2T

could be prior art, Leer cannot rely on it to invalidate the '358 patent, either because the

evidence regarding the X2T is not authenticated or because the version of the X2T that

Leer presents is not the version that could qualify as prior art. (D.I. 175 at 6-8.)

A.    **Public Use**

The public-use bar under § 102 is triggered when the invention is (1) in public use

and (2) ready for patenting. *Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1348

(Fed. Cir. 2018). "Public use includes any use of [the claimed] invention by a person

other than the inventor who is under no limitation, restriction or obligation of secrecy to

the inventor." *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir.

2002) (alteration in original). An invention is ready for patenting if it has been reduced

to practice – i.e., if the subject matter of the claim is known to work for its intended

purpose. *Polara Eng'g*, 894 F.3d at 1348.[1]

      Attached to its opposition to Extang's motion for summary judgment, Leer

submitted a declaration from Eugene Dylewski, a lead engineer for Leer. **[D.I. 202.]** In

that declaration, Dylewski described events that occurred at the National Dealer Advisory

Board Meeting in Las Vegas, Nevada, on November 3, 2014 ("the 2014 DAB Meeting").

(D.I. 202 at ¶ 5.) Dylewski stated that he and two colleagues, Adrian Cook and Ron

Melius, "prepared a fully functional prototype of [Leer's X2T tonneau cover] to

showcase at that meeting." (D.I. 202 at ¶ 7.) According to the declaration, they

presented a PowerPoint and described the X2T to a group of approximately twenty

people. (D.I. 202 at ¶ 7.) Following that presentation, the group went outside to inspect

the X2T prototype that was installed on Melius's truck, which was parked just outside the

entrance of the hotel hosting the meeting. (D.I. 202 at ¶ 8.) Melius and Dylewski

showed the group how to install, remove, open, and close the cover. (D.I. 202 at ¶ 8.)

According to Dylewski, although Leer later made various changes to the X2T's

---

[1] Extang asserts that "[t]he public use must enable one of ordinary skill in the art to practice the invention in order to constitute a bar to patentability." (D.I. 175 at 3.) But the Federal Circuit has clarified that "the public use itself need not be enabling." *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1356 (Fed. Cir. 2008) (citing *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994)); *see also Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1359 (Fed. Cir. 2013) (explaining that, rather than determine whether the public use is enabling, district courts should determine whether the public use placed the claimed invention in the public's possession). Instead, the enablement requirement applies to "prior art references" such as publications and documents. *Tech. Consumer Prod., Inc. v. Lighting Sci. Grp. Corp.*, 955 F.3d 16, 23 (Fed. Cir. 2020).

dimensions in order to accommodate different truck models, the X2T's overall design did not change following the demonstration of the prototype. (D.I. 202 at ¶ 9.)

Dylewski's account could lead a reasonable jury to infer that the X2T's demonstration at the 2014 DAB Meeting was a public use, thus qualifying the X2T as prior art. The prototype was shown to work as intended, and it was displayed to individuals who had no obligation to keep it confidential.

Perhaps even more hotly disputed, however, is whether Dylewski's new declaration can be used to support Leer's opposition to summary judgment. Extang argues that the first time they learned the details about the 2014 DAB Meeting was during briefing on summary judgment, long after discovery closed. Federal Rule of Civil Procedure 26(a) requires a party to disclose "each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]" "If a party fails to provide information or identify a witness as required by Rule 26(a) … , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c)(1). Extang argues that Leer never previously disclosed information about the 2014 DAB Meeting and should not be permitted to rely on it now.

The discovery record tells a different story. In Leer's invalidity contentions, it told Extang that "[t]he X2T was publicly disclosed as early as November 2014" – the date of the 2014 DAB Meeting. (D.I. 161, Ex. 50.) Leer produced the PowerPoint presentation from the 2014 DAB Meeting, and it cited that document in its invalidity

contention interrogatories. One slide, entitled "Fully Functional Prototype," displayed a photo of the X2T prototype on top of a truck bed. (D.I. 200, Ex. III at '6054.) Another slide, entitled "Introductions," listed the names of nineteen individuals, including not only Dylewski, Melius, and Cook, but also many who were identified as unaffiliated with Leer. (*Id.* at '6055.) Thus, while Leer's disclosure obligations were not carried out in a fully commendable manner, Extang was sufficiently put on notice of Leer's contention that there was a public use of the X2T at the 2014 DAB Meeting and of who the relevant witnesses were. Extang could have asked Dylewski for more information about the 2014 DAB Meeting at his deposition, and it could have sought information from Melius and Cook.[2] The failure to do so does not deprive Leer of its chance to rely on Dylewski's declaration. *See* Fed. R. Civ. Pro. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Dylewski's proffered testimony creates a genuine dispute as to whether the X2T qualifies as prior art by being in public use before June 28, 2016.

### B.    On Sale

The on-sale bar under § 102 is triggered when a claimed invention is (1) commercially sold or offered for commercial sale and (2) ready for patenting. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020). A commercial offer for

---

[2] Furthermore, at oral argument on the motions for summary judgment, I ordered Leer to make Dylewski available for deposition once more before trial.

sale is "one which the other party could make into a binding contract by simple acceptance." *Id.*

Leer asserts that the X2T was first sold to Keystone Automotive Operations in the spring of 2016. It produced a spreadsheet titled "Keystone Initial Order by model – Trilogy X2T by LEER 2016-04-21". (D.I. 200, Ex. III at '11360.) Other documentary evidence includes an April 2016 "Product Costing Worksheet" – which Extang itself produced – detailing costs for the X2T under the header "Sold to Keystone" (D.I. 200, Ex. III at '4262; D.I. 200, Ex. KKK at '57892), and a May 2016 "Importer Security Filing" that Leer filled out for a shipment of tonneau covers to Keystone (D.I. 200, Ex. III. at '4305-08). While the record also contains evidence to suggest that the X2T was not publicly available for sale until the fall of 2016 (e.g., Ex. 27; Ex. 13 at 33:17-20), a jury could reasonably infer from the evidence noted above that the X2T was reduced to practice and sold before June 28, 2016, making it prior art.

## C. Authenticated Corroborating Evidence

Extang argues that, even if the X2T is prior art, Leer cannot use it to invalidate the '358 patent because it has not produced adequate evidence on which a finding of invalidity could be based. It takes issue with Leer's failure to produce a physical X2T tonneau cover, and it questions the authenticity of photographs and CAD drawings that Leer's expert relies on for his invalidity analysis. (D.I. 175 at 6-8.) It also says that the X2T's marketing materials cannot support the expert's analysis because they post-date the application for the '358 patent, and it argues that depictions of the X2T that Leer has

presented differ materially from any version that was in public use or on sale prior to the '358 patent's priority date. (D.I. 175 at 6-8.)

It is true that Leer will need to establish invalidity by clear and convincing evidence – for both the public-use bar and the on-sale bar – and the sole testimony of an interested individual generally will not suffice. *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1301 (Fed. Cir. 2016). But self-interested testimony can be corroborated by documentary evidence, other testimonial evidence, or even circumstantial evidence. *Id.* "There are no hard and fast rules as to what constitutes sufficient corroboration, and each case must be decided on its own facts." *Id.* at 1302.

Here, Leer has presented more than just Dylewski's assertion that the X2T was publicly used and on sale. The potentially corroborating evidence includes at least the PowerPoint presentation from the 2014 DAB Meeting, the spreadsheet and worksheets reflecting sales to Keystone, and photos and diagrams of the X2T (Ex. 1 at 56-65). Leer will of course need to demonstrate that those photos and diagrams truly depict the X2T. But Leer can do that through testimony from a percipient witness that the evidence is what it claims to be. Fed. R. Evid. 901(b). As a lead design engineer for the X2T (Ex. GGG at 45:10-11), Dylewski may well be able to testify as to whether the photos and diagrams accurately reflect the version of the X2T – the purported fully functional prototype (D.I. 200, Ex. III at '6054) – that was allegedly in public use or on sale before June 2016. A jury may choose to disbelieve Dylewski and the corroborating evidence, but that is a matter for trial and not summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Extang's Motion for Partial Summary Judgment That the X2T Is Not Prior Art (D.I. 174).